**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL M. TURNACLIFF, in his
capacity as Administrator for the
Estate of Kathleen M. Dodd, with
will annexed,
            *Plaintiff-Appellant,*

            v.

STEVE WESTLY, in his individual &
official capacity as State
Controller of the State of
California, and in his custodial
capacity as Administrator of the
Unclaimed Property Fund,
            *Defendant-Appellee.*

No. 07-15287

D.C. No.
CV-05-05303-SI

OPINION

Appeal from the United States District Court
for the Northern District of California
Susan Yvonne Illston, District Judge, Presiding

Argued and Submitted
August 12, 2008—San Francisco, California

Filed October 15, 2008

Before: David R. Thompson and Kim McLane Wardlaw,
Circuit Judges, and Susan R. Bolton,* District Judge.

Opinion by Judge Thompson

---

*The Honorable Susan R. Bolton, United States District Judge for the
District of Arizona, sitting by designation.

14549

**COUNSEL**

David B. Tillotson & John A. Lofton, San Francisco, California, for the plaintiff-appellant.

Edmund G. Brown, Jr., Christopher E. Krueger, Douglas J. Woods, and Zackery P. Morazzini, Sacramento, California, for the defendant-appellee.

**OPINION**

Judge THOMPSON, Senior Circuit Judge:

Plaintiff-Appellant Michael M. Turnacliff (Turnacliff), in his capacity as administrator of the Estate of Kathleen M. Dodd (the Estate), appeals the district court's summary judgment in favor of defendant Steve Westly, in his individual and official capacity as State Controller of the State of California, and his custodial capacity as administrator of the Unclaimed Property Fund (Controller). Turnacliff alleged that the Controller improperly calculated the interest due to the Estate for the time that the State of California held the Estate's unclaimed property.

Turnacliff contends that, when the Controller returned the previously unclaimed property to the Estate, with interest, the Controller incorrectly construed California Code of Civil Procedure § 1540(c) (amended 2002) by applying a single, statutorily-defined interest rate to the principal for the years that California held the property. Turnacliff maintains that the Controller should have applied an average of various interest rates that California earned while holding the property. He also contends that, if the Controller's construction and application of § 1540(c) was correct, then the Controller's action ran afoul of the Takings Clause of the Fifth Amendment, because he did not pay to the Estate the actual interest that the unclaimed property earned while California held it.

Turnacliff further argues, for the first time on appeal, that the Controller violated the Takings Clause by failing to provide adequate notice to the Estate before acquiring the abandoned property. Exercising our discretion, we decline to consider this argument.

We have jurisdiction under 28 U.S.C. § 1291, and affirm the district court's summary judgment in favor of the Controller. The Controller correctly construed and applied § 1540(c).

And, even if the facts of this case were to implicate the Takings Clause, Turnacliff has failed to show that the Estate is entitled to additional compensation.

## I. Statutory Framework

In *Suever v. Connell*, 439 F.3d 1142 (9th Cir. 2006), we explained:

> Title 10 of the California Code of Civil Procedure deals with unclaimed property located in California. Cal. Civ. Proc. Code § 1300, *et seq.* "It is the purpose of this title to provide for the receipt, custody, investment, management, disposal, escheat and permanent escheat of various classes of unclaimed property . . . ." *Id.* § 1305 . . . . " 'Escheat' . . . means the vesting in the state of title to property the whereabouts of whose owner is unknown or whose owner is unknown, . . . subject to the right of claimants to appear and claim the escheated property . . . ." *Id.* § 1300(c) . . . .

*Suever*, 439 F.3d at 1144 (internal brackets and footnotes omitted).

At the time that the Controller received the Estate's claim for the property, and returned it, California Code of Civil Procedure § 1540(c) provided:[1]

> The Controller shall add interest at the rate of 5 percent or the bond equivalent rate of 13-week United States Treasury bills, whichever is lower, to the amount of any claim paid the owner under this section for the period the property was on deposit in the Unclaimed Property Fund. No interest shall be pay-

---

[1]Since August 11, 2003, § 1540(c) has provided "No interest shall be payable on any claim paid under this chapter."

able for any period prior to January 1, 1977. Any interest required to be paid by the state pursuant to this section shall be computed as simple interest, not compound interest. For purposes of this section, the bond equivalent rate of 13-week United States Treasury bills shall be defined in accordance with the following criteria:

(1)    The bond equivalent rate of 13-week United States Treasury bills established at the first auction held during the month of January shall apply for the following July 1 to December 31, inclusive.

(2)    The bond equivalent rate of 13-week United States Treasury bills established at the first auction held during the month of July shall apply for the following January 1 to June 30, inclusive.

Proceeds from the sale of escheated property are deposited in the Unclaimed Property Fund in an Abandoned Property Account. *Id.* § 1564(a). On at least a monthly basis, the Controller is required to transfer to California's General Fund all money in the Abandoned Property Account in excess of fifty thousand dollars. *Id*. § 1564(c).

Citing California Government Code §§ 16470 and 16480.1, Turnacliff contends that "surplus" money in the General Fund is placed in a Pooled Money Investment Account (PMIA), where it earns interest at the rate of the PMIA yield. The Controller does not dispute this assertion.

## II.   Background

On November 15, 1958, Kathleen M. Dodd died.

In January 1979, Echlin, Inc. sent a cash dividend of more than $3100 to Ms. Dodd. That dividend was returned to Echlin by the United States Postal Service. Over the next

eleven years, Echlin sent Ms. Dodd at her address of record dozens of cash dividends, ranging from $3100 to $8000. None of the dividend checks were ever cashed, and most were returned by the Postal Service.

On June 29, 1990, the Controller received 57,600 shares of Echlin stock that had belonged to the late Ms. Dodd. While the shares were held by the Controller, they earned dividends in excess of $347,000. The Controller sold the stock on June 17, 1993, for more than $1,513,000. By June 1993, the Controller held property in excess of $1,860,000 belonging to the Estate. In May 2003, the Estate filed a claim with the Controller for the return of its property.

On June 24, 2003, the Controller issued a check to the Estate for roughly $1,983,000, which purportedly represented the principal plus simple interest at a rate of 1.69%. The figure of 1.69% was reached by referring to the interest rate of 13-week United States Treasury bills established at the first auction of July 2002.

The interest was incorrectly calculated, however, and on January 21, 2005, the Controller paid another $201,000 to the Estate. The parties agree that after this payment, the Controller had paid in full the 1.69% simple interest on the principal of the previously unclaimed property. But the Estate disagreed with the Controller that 1.69% was the correct interest rate that should have applied.

On December 21, 2005, Turnacliff filed this action alleging the Controller incorrectly applied California Code of Civil Procedure § 1540(c), violated the Takings Clause by paying to the Estate less than the amount of interest actually earned by the unclaimed property, violated the Estate's procedural due process by retroactively applying the 2002 version of § 1540(c) to the pre-2002 years that California held the unclaimed property, and breached its fiduciary duty to the Estate under the law of the State of California.

The district court granted the Controller's motion for summary judgment and denied Turnacliff's motion for summary judgment, holding that the Controller's interpretation of § 1540(c) — applying a single rate for the time that the principal of the unclaimed property was held by California — was correct, and that this interpretation raised no constitutional problems. This appeal followed.[2]

## III.  Discussion

### A.  California Code of Civil Procedure § 1540(c)

Turnacliff contends that California Code of Civil Procedure § 1540(c) required the Controller to add interest to the Estate's unclaimed property at a rate of the *average* of the 13-week bond equivalent rates of United States Treasury bills established — according to the statute — at the first auctions in January and July of each year over the time the Controller held the assets. This interpretation of the statute, Turnacliff maintains, results in a "reasonable approximation of interest actually earned." According to Turnacliff's calculations, the Controller should have paid interest at a rate of 4.5%.

The Controller argues that the plain language of § 1540(c) required him to apply a *single* interest rate. And, in this case, the applicable rate was 1.69%.

[1] Because we are interpreting a California statute, we apply California's rules of statutory construction. *See In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001). In

---

[2]Turnacliff does not appeal summary judgment on his claim that the Controller violated the Estate's procedural due process rights. As for his claim that the Controller breached his fiduciary duty to the Estate, Turnacliff refers to "the basic tenets of trust law" in his opening brief, but only in developing his Takings Clause argument. Turnacliff offers no argument, and presents no authority, on the issue of the Controller's fiduciary duty to the Estate. Accordingly, we deem this issue abandoned. *See Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir. 1988).

this regard, we have previously noted that "[t]he California Supreme Court has declared that the 'ultimate task' in statutory interpretation 'is to ascertain the legislature's intent.' " *Id.* (quoting *People v. Massie*, 19 Cal. 4th 550, 569, 79 Cal. Rptr. 2d 816, 967 P.2d 29, 41 (1998)). " 'Ordinarily, the words of the statute provide the most reliable indication of legislative intent.' " *In re First T.D. & Inv.*, 253 F.3d at 527 (quoting *Pac. Gas & Elec. Co. v. County of Stanislaus*, 16 Cal. 4th 1143, 1152, 69 Cal. Rptr. 2d 329, 947 P.2d 291, 297 (1997)). "Courts should give the language of the statute 'its usual, ordinary import and accord significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.' " *In re First T.D. & Inv.*, 253 F.3d at 527 (quoting *Dyna-Med, Inc. v. Fair Employment & Hous. Comm'n*, 43 Cal. 3d 1379, 1386-87, 241 Cal. Rptr. 67, 743 P.2d 1323, 1326 (1987)).

**[2]** California Code of Civil Procedure § 1540(c) provides: "The Controller shall add interest at *the rate* of 5 percent or the bond equivalent rate of 13-week United States Treasury bills, whichever is lower, to the amount of any claim paid the owner under this section *for the period the property was on deposit . . . .*" (emphasis added).

**[3]** We agree with the district court that the Controller's construction of § 1540(c) was correct. The statute requires the Controller to add interest at a "rate," in the singular, not plural, "for the period the property was on deposit." The plain language of the statute supports the Controller's construction that a single interest rate must be applied for the whole time period that unclaimed property was held.

Turnacliff's construction would change the text of the statute, and its ordinary import, by inserting the word "average" between the words "the" and "rate" in the first clause of the above-quoted portion of the statute as it existed during the applicable period. We see no reason why the California Legislature would not have included the word "average" in the stat-

ute if indeed it had intended to require the Controller to average the statutorily-defined interest rates and apply the average interest rate to the principal of unclaimed property.

## B. The Takings Clause

Turnacliff also argues that if the Controller's construction of California Code of Civil Procedure § 1540(c) was correct, then the Controller violated the Takings Clause of the Fifth Amendment by failing to pay "just compensation" for taking the Estate's property. Turnacliff contends that, under the traditional common law rule that "interest follows the principal," any and all interest that the unclaimed property earned while held by California belongs to the Estate. Turnacliff further maintains that, to the extent that the property did not earn actual interest, the Estate is entitled to constructive interest. We disagree.

[4] Pursuant to the Takings Clause of the Fifth Amendment, "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. "In order to state a claim under the Takings Clause, a plaintiff must first demonstrate that he possesses a 'property interest' that is constitutionally protected." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1198 (9th Cir. 1998). "Only if he does indeed possess such an interest will a reviewing court proceed to determine whether the expropriation of that interest constitutes a 'taking' within the meaning of the Fifth Amendment." *Id.* Depending on the facts of a case, a court will answer the question whether a "taking" has occurred by utilizing either a "per se" or an "ad hoc" analysis. *See Brown v. Legal Found. of Wash.*, 538 U.S. 216, 233-35 (2003). Finally, if a "taking" has indeed occurred, a court must determine whether the property owner has received "just compensation." *Id.* at 235 ("The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation.") (quotation marks and citation omitted). The "just compensation" required by the Fifth Amendment "is measured by the

property owner's loss rather than the government's gain." *Id.* at 235-36.

**[5]** Assuming, *arguendo*, that the Estate had a cognizable property right to interest earned by its escheated property,[3] and that this property was "taken" by California, no further compensation is due to the Estate because when the Estate abandoned its property, it forfeited any right to interest earned by that property.

**[6]** The Estate does not challenge the fundamental prerogative of the State to acquire and hold abandoned property. And, before the district court, the Estate did not challenge the escheat, per se, of its property to the State. Implicitly, therefore, the Estate admitted that the property properly escheated to the State because it sat abandoned for many years.

In *Texaco, Inc. v. Short*, 454 U.S. 516, 526, the Court explained that "[f]rom an early time, th[e] Court has recognized that States have the power to permit unused or abandoned interests in property to revert to another after the passage of time." The Court further explained that owners of abandoned property were not owed compensation:

---

[3]In *Schneider*, we held, despite a state statute to the contrary, that prisoners possess a constitutionally cognizable property right in the interest earned on the principal held in Inmate Trust Accounts. 151 F.3d at 1201. We explained that, though states may "create constitutionally protected 'new property' interests," they cannot "roll back or eliminate traditional 'old property' rights" found within the "core of constitutionally protected property." *Id.* at 1200-01 (emphasis removed). That "core," we continued, "is defined by reference to traditional 'background principles' of property law." *Id.* at 1201. "The 'interest follows principal' rule's common law pedigree, and near-universal endorsement by American courts — including California's" left us with "little doubt that interest income of the sort at issue" in *Schneider* was "sufficiently fundamental that States may not appropriate it without implicating the Takings Clause." *Id.* at 1201 (citations omitted). By contrast, we are unaware of, and Turnacliff has not provided us, any authority for the proposition that interest earned by unclaimed or abandoned property belongs to the property owner.

> In ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law, this Court has never required the State to compensate the owner for the consequences of his own neglect . . . . It is the owner's failure to make any use of the property — and not the action of the State — that causes the lapse of the property right[.]

*Id.* at 530.

**[7]** Though *Short* concerned abandoned mineral interests, the long-running principle articulated in that case applies with equal force to this case involving commercial paper. To the extent that it was even entitled to it, the Estate has received "just compensation," because California returned the Estate's abandoned property, with statutorily-determined interest of 1.69%. The Estate has no Fifth Amendment right to "actual" or "constructive" interest earned by its property while held by the State; California need not further compensate the Estate for the consequences of the Estate's neglect.

The cases that Turnacliff cites for the proposition that the Estate is owed actual or constructive interest are distinguishable, because in none of them was the property owner negligent in handling his or her property.[4]

## C.   Notice

For the first time on appeal, Turnacliff argues that the Estate was not afforded adequate procedural due process before its property was taken.

We will review an issue that has been raised for the

---

[4]Because we do not inquire into the interest earned by the property, we deny as irrelevant Turnacliff's request for judicial notice of United States Department of Treasury records.

first time on appeal under certain narrow circumstances: (1) to prevent a miscarriage of justice; (2) when a change in law raises a new issue while an appeal is pending; and (3) when the issue is purely one of law. The decision to consider an issue not raised below is discretionary, and such an issue should not be decided if it would prejudice the other party.

*MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1086 (9th Cir. 2006) (internal quotation marks and citations omitted).

We decline to consider this new issue on appeal. None of the three narrow circumstances which must exist for us to consider an issue raised for the first time on appeal is present in this case. Primarily, Turnacliff's due process challenge is not a pure question of law, but rather depends on a determination of facts not in the record.[5] Further, we reject the argument that *Taylor v. Westly*, 488 F.3d 1197 (9th Cir. 2007), changed the law in a way that created a new issue on appeal. Turnacliff could easily have made a procedural due process argument in the lower court prior to our decision in that case. And finally, in light of the above, we perceive no miscarriage that would result from our restraint. Accordingly we exercise our discretion not to review Turnacliff's due process claim that he raises for the first time in this appeal.

---

[5]We deny Turnacliff's request that we take judicial notice of a declaration — of a former employee in the Controller's office — filed in a different action. Rule 201(b) of the Federal Rules of Evidence provides that: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The facts described in the declaration (regarding the manner in which the Controller provided notice to property owners) are not "generally known;" and the former employee is not a source "whose accuracy cannot reasonably be questioned."

**IV. Conclusion**

We conclude that the Controller correctly construed California Code of Civil Procedure § 1540(c) and did not violate the Takings Clause when he returned the Estate's previously abandoned property with statutorily-determined interest of 1.69%. The district court properly granted summary judgment in favor of the defendant-appellee.

**AFFIRMED**.