

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-5-2008

# Simon v. Wiessmann

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3880

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Simon v. Wiessmann" (2008). *2008 Decisions*. Paper 155.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/155

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-3880
_____

RICHARD D. SIMON, Individually and as Attorney-in-Fact
for Vera Pomerantz, and on behalf of all others similarly situated,
VERA POMERANTZ, Individually Through Her Attorney-in-Fact,
and on behalf of all others similarly situated

v.

ROBIN L. WEISSMANN, Treasurer of the Commonwealth of Pennsylvania

Richard D. Simon, Vera Pomerantz, and *Ronald J. Smolow,

Appellants

*(Pursuant to Rule 12(a), F.R.A.P.)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civ. Action No. 04-CV-941)
District Judge:  Honorable Jan E. DuBois
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 28, 2008

Before: McKEE, NYGAARD, and MICHEL,* *Circuit Judges*.

(Filed: December 1, 2008)

_____

*The Honorable Paul R. Michel, Chief Judge of the United States Court of Appeals
for the Federal Circuit, sitting by designation.

_____

AMENDED OPINION OF THE COURT
_____

MICHEL, *Chief Circuit Judge.*

Richard D. Simon, Vera Pomerantz, Ronald J. Smolow, and others of the putative class (collectively "Simon") are claimants of previously unclaimed property taken into the custody of the Commonwealth of Pennsylvania, pursuant to the Disposition of Abandoned and Unclaimed Property Act ("DAUPA"), codified at 72 P.S. § 1301.1 et seq. We must determine whether certain DAUPA provisions, relieving the State from having to pay interest earned on unclaimed property, impose a taking for which just compensation must be paid, pursuant to the Fifth and Fourteenth Amendments of the U.S. Constitution. We also decide if the district court properly admitted expert testimony relating to an analysis of whether Mr. Smolow, a claimant of the unclaimed property, suffered a "net loss" while that property was in the possession of the Commonwealth.

I.

As stated in his complaint and stipulated by the parties, Smolow was the rightful owner of 300 shares of common stock in Parker Drilling Company (the "Parker Stock"). In July 2002, pursuant to 72 P.S. § 1301.2, the stocks were presumed abandoned and transferred to the Commonwealth from Parker's agent, Wells Fargo. After receipt, the Commonwealth liquidated the 300 shares in February 2003, pursuant to 72 P.S. § 1301.17(e). The per share sale price was $2.01. In August 2003, Smolow learned of

2

the confiscation of his stock and filed a claim for his property, which the Commonwealth processed, paying him $586.47 in January 2004. The Commonwealth refused to pay Smolow any of the interest earned by the Commonwealth on the proceeds of the stock sale, which Smolow estimated as about $30.

On May 3, 2004, Smolow filed a class action against then Treasurer of the Commonwealth of Pennsylvania Barbara Hafer (herein "the Commonwealth"). In his amended complaint filed May 10, 2004, Smolow alleged, among other things, that the state had failed to pay him interest earned on his property, then in the custody of the state, pursuant to DAUPA. Smolow asserted that, based on this failure to pay interest, DAUPA violates the Takings Clause of the Fifth Amendment.

After each side retained experts to analyze the costs associated with administering the program, and specifically the costs of processing Smolow's claim, both parties filed motions for summary judgment.[1] Smolow also moved in limine to exclude portions of the report and testimony of the Commonwealth's expert, John S. Stoner. On June 25, 2007, in an interlocutory order, the district court denied Smolow's motion in limine. The court granted summary judgment in favor of the Commonwealth, but only as to Smolow and

---

[1]We note that, prior to the motions for summary judgment, the district court had dismissed a number of state law claims and stayed the proceedings of this case in light of the parallel action pending in state court. See Smolow v. Hafer, 867 A.2d 767, 776 (Pa. Commw. Ct. 2005), aff'd, 2008 WL 4926759 (Pa. Nov. 19, 2008). After the state case was decided, the district court lifted the stay in the present action and proceeded to address the merits of Smolow's claims.

3

not against the entire class, because Smolow could not prove a net loss for his taking claim.

The court then permitted plaintiffs' counsel to file a second amended complaint, which substituted Simon and Pomerantz as lead plaintiffs. Simon and Pomerantz alleged a net loss but did not specifically calculate the damages. The Commonwealth again moved for summary judgment on the basis that "whether or not the interest earned on plaintiffs' property exceeded the cost of handling their property and processing their claims, plaintiffs have not suffered a taking without just compensation." The district court agreed and granted summary judgment to the Commonwealth on August 27, 2007.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We also have jurisdiction to review the interlocutory order pursuant to the "merger rule." In re Westinghouse Sec. Litig., 90 F.3d 696, 706 (3d Cir. 1996) ("Under the 'merger rule,' prior interlocutory orders merge with the final judgment in a case, and the interlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order."). We apply de novo review to a grant of summary judgment. Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993).

Pursuant to the Takings Clause of the Fifth Amendment, no state shall take "private property for public use, without just compensation." U.S. Const. amend. V; see also Chicago Burlington & Quincy R.R. Co. v. City of Chicago, 166 U.S. 226, 239 (1897)

4

(applying the Fifth Amendment to the States under the Fourteenth Amendment). To assert a valid takings claim under the Fifth Amendment, a plaintiff must have a property interest that is constitutionally protected. See Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1198 (9th Cir. 1998). A claim that a state has taken, without just compensation, interest accruing on monetary property held by a state is analyzed as a per se taking. See Brown v. Legal Found. of Wash., 538 U.S. 216, 233-35 (2003).

Here, Simon and the other plaintiffs claim that the Commonwealth must pay interest generated from their property, which the Commonwealth took into its custody pursuant to DAUPA. We first point out that the parties do not dispute that the statute at issue, as correctly construed, does not require the payment of interest. This issue was decided by the Commonwealth Court and not appealed by Smolow. See Smolow v. Hafer, 867 A.2d 767, 776 (Pa. Commw. Ct. 2005), aff'd, 2008 WL 4926759 (Pa. Nov. 19, 2008). The DAUPA issue before us is only whether the Commonwealth effected a taking when it refused to pay interest earned on the cash being held for the property owners until they reclaimed their property.

No one can reasonably question a state's power to escheat personal property under appropriate circumstances. "As a broad principle of jurisprudence rather than as a result of the evolution of legal rules, it is clear that a state, subject to constitutional limitations, may use its legislative power to dispose of property within its reach, belonging to unknown persons." Standard Oil Co. v. New Jersey, 341 U.S. 428, 436 (1951).

5

Likewise, the common law doctrine of bona vacantia allows states to take control and dispose of abandoned property. See Delaware v. New York, 507 U.S. 490, 497 (1990). States indeed have a long history of properly escheating intangible private property deemed abandoned without violating the Constitution. For instance, in United States v. Klein, 303 U.S. 276, 282-83 (1938), the Court approved of a Pennsylvania statute that allowed for the escheat of unclaimed property paid into a federal court's registry and later transferred to a federal trust fund. In Roth v. Delano, 338 U.S. 226, 230 (1949), the Court permitted Michigan to take title to unclaimed dividends on proved claims of creditors of an insolvent national bank. And in Anderson National Bank v. Luckett, 321 U.S. 233, 241-42 (1944), the Court held that the state of Kentucky did not violate the Constitution by escheating abandoned accounts held by a solvent national bank.

At the same time, however, courts have long applied the common law rule of "interest follows the principal." As the Supreme Court recognized, "the rule that 'interest follows principal' has been established since at least the mid-1700's." Phillips v. Wash. Legal Found., 524 U.S. 156, 165 (1998) (citing Beckford v. Tobin, 1 Ves. Sen. 308, 310, 27 Eng. Rep. 1049, 1051 (Ch. 1749)). The rule has been adopted by the common law of many, if not all, states, see Phillips, 524 U.S. at 165 n.5, including Pennsylvania. See Lessner v. Rubinson, 592 A.2d 678, 680 (Pa. 1991) ("It is fundamental that the interest

6

follows the principal in ownership."); see also McCalla v. Ely, 64 Pa. 254, 1870 WL 8692 (1870) ("Lawful interest . . . follows the principal as the shadow does the substance.").

Still, the rule is not immutably without exception. Even the development of the rule shows that, as with many common law doctrines, it is not a static principle and was originally quite limited.

The right to receive interest on money owed or withheld can also be found in the common law in the rules that allow interest as damages, but the history of this right is somewhat checkered and confusing. The early common law, reflecting religious and societal prohibitions that stretched back to ancient times, frowned on all forms of interest. However, with the growth of the mercantile class in the late middle ages, interest on money loaned became a common commercial practice and was recognized by statute as early as 1545. This form of interest between private parties should be distinguished from interest as damages, which was recognized in England by 1780, but was allowed only "upon a contract for payment of money on a day certain." This rule was expanded by statute in 1833 to include actions for trover and trespass.

The attitude in this country toward the recovery of interest as damages has been "less intransigent" than that found in the English common law. It was recognized early on that interest should be allowed as damages for the withholding of another's funds regardless of whether the obligation arose from a contract or the wrongful acquisition or detention of another's money. This view found expression in the maxim "interest goes with the principal, as the fruit with the tree," and was grounded in the theory that held money fails to yield a return only in the rarest of circumstances. Therefore, where an ascertainable amount was owed to another, denying interest on the sum

7

amounted to a double wrong by depriving the person owed of the increase to which he was justly entitled and by allowing the one holding the funds to profit from the use of funds that did not rightly belong to him.

N. Ind. Pub. Serv. Co. v. Citizens Action Coalition of Indiana, Inc., 548 N.E.2d 153, 158-59 (Ind. 1989) (citations omitted). From this short synopsis, we are satisfied that the rule of "interest follows the principal" was never intended to apply to every situation involving personal property held by someone other than the property owner.

Appellants invest much in the common law doctrine, and they are correct in many respects. For example, "[t]he usual and general rule is that any interest on an interpleaded and deposited fund follows the principal and is to be allocated to those who are ultimately to be the owners of that principal." Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 162 (1990). Consistent with its generality, the common law rule is normally applicable in those instances involving a recognized obligation of debt because one party currently possesses property in which title belongs to a second, known party. What is before us here, however, is not the "usual and general" case but whether interest generated from abandoned property constitutes a cognizable property right under the Fifth Amendment. Appellants have not directed us to any long-standing practice of courts applying the "interest follows the principal" rule to abandoned property. None of the state cases cited in Phillips involves a situation where a property owner claims he is owed the fruit after abandoning the tree. And that is the situation we have now. Thus,

8

appellants have not provided satisfactory legal support for their contention that the doctrine of "interest follows the principal" should be applied to abandoned property.

The most analogous Supreme Court case is <u>Texaco, Inc. v. Short</u>, 454 U.S. 516 (1982), which affirms a state's right to dispose of abandoned property. There, the Court ruled on the constitutionality of an Indiana statute mandating the reversion of mineral rights from their owner to the surface owner if the mineral rights had not been used for twenty years. <u>Id.</u> at 530. The Court affirmed the validity of the statute against challenges under both the Due Process and Takings Clauses and approved Indiana's right to treat the mineral interests as abandoned if not utilized within a certain period. <u>Id.</u> In doing so, the Court ruled that the state did not to have pay for the owner's neglect:

> In ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law, this Court has never required the State to compensate the owner for the consequences of his own neglect. . . . It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no "taking" that requires compensation.

<u>Id.</u> Just as in <u>Texaco</u>, where the owner's failure to use the mineral rights within a certain, statutorily-defined period caused abandonment of those rights, the plaintiffs here let their property interest lapse after the time prescribed by DAUPA. Thus, under the rationale of <u>Texaco</u>, the Commonwealth of Pennsylvania has no obligation to pay interest on property which plaintiffs abandoned.

The Supreme Court cases upon which appellants primarily rely involve, in our opinion, a fundamentally different property status. In each of the cases, the property was not deemed abandoned. In Phillips and Brown, the money belonged to clients of attorneys, who were required to deposit those funds into an IOLTA program. Brown, 538 U.S. at 223-24; Phillips, 524 U.S. at 160-62. In Webb's, the interest-generating property was money deposited by a known litigant into a court's interpleader fund. 449 U.S. at 156. Thus, in each case, the identity of the rightful owner of the property was known and identifiable, and the money was not deemed abandoned. There was never any doubt as to the rightful owner. Furthermore, the property owner (or his agent) transferred custody of the property due to a separate requirement for transfer with the expectation of regaining custody of the property in the near future. In the present case, the property was presumed by statute to be abandoned, see, e.g., 72 P.S. § 1301.6, with the identity and/or whereabouts of the property owner unknown during the time the Commonwealth possessed the property. Because of this significant difference in the status of the property, we find the Supreme Court's application of the "interest follows the principal" rule less appropriate here.

Furthermore, Simon has not provided a sufficient reason why we should disagree with the numerous other courts which have held that similar unclaimed property statutes do not run afoul of the Takings Clause. See Morris v. Chiang, 77 Cal. Rptr. 3d 799, 805 (Cal. App. 4th June 3, 2008); Rowette v. North Carolina, 656 S.E.2d 619, 625-26 (N.C.

10

App.), review denied, 666 N.E.2d 487 (N.C. 2008); Hooks v. Kennedy, 961 So.2d 425, 431 (La. Ct. App.), cert. denied, 967 So.2d 507 (La. 2007); Sogg v. Ohio Dept. of Commerce, 2007 WL 1821306 (Ohio App. 10 Dist. 2007); Clark v. Strayhorn, 184 S.W.2d 906, 913 (Tex. App.), review denied (May 12), cert. denied, 127 S. Ct. 508 (2006); Smyth v. Carter, 845 N.E.2d 219, 224 (Ind. App.), transfer denied, 860 N.E.2d 588 (Ind. 2006), cert. denied, 127 S. Ct. 1155 (2007); Fong v. Westly, 12 Cal. Rptr. 3d 76, 83 (Cal. App. 3d 2004).[2]

In addition to the state courts, our sister court, the Ninth Circuit, has recently ruled on the takings issue in the context of a California unclaimed property statute. See Turnacliff v. Westly, No. 07-15287, 2008 WL 4570610, *4-5 (9th Cir. Oct. 15, 2008). In Turnacliff, the executor of an estate claimed that California failed to pay "just compensation" because the state paid less than actual interest. Id. at *2. The court ruled that, when an estate's property becomes abandoned under the California Code of Civil Procedure and is then "taken" by California, "no further compensation is due to the [e]state because when the [e]state abandoned its property, it forfeited any right to interest earned on that property." Id. at *4. The court approved of Texaco's approach to

_____

[2] We note that the Supreme Court of Pennsylvania recently denied Smolow's takings claim for substantially the same reasons as we do. See Smolow v. Hafer, No. 32 MAP 2005, 2008 WL 4926759 (Pa. Nov. 19, 2008). Although there the takings claim was based only on the state constitution, the Supreme Court of Pennsylvania explained that it "has applied the federal constitutional takings jurisprudence . . . when considering takings issues under the Pennsylvania Constitution." Id. at *2.

11

abandoned property, noting that "the long-running principle articulated in [Texaco] applies with equal force to [the] case involving commercial paper." Id. at *5.

On the contrary, Simon has directed our attention to only one court that has held an unclaimed property statute to effect an unconstitutional taking. Canel v. Topinka, 818 N.E.2d 311, 325-26 (Ill. 2004). Although the Illinois Supreme Court is the only state supreme court to rule on the issue, we are not convinced that Canel warrants a reversal here. First, we agree with the district court below when it recognized the narrow holding of Canel. The Illinois Supreme Court "stress[ed] that [its] opinion today is limited only to dividends accruing on the stock held by the state under the Act. We hold that such dividends may not be taken by the state without just compensation to the owner." Canel, 818 N.E.2d at 326. Our case addresses only the issue of interest earned on cash.[3] Simon has not convinced us that interest on cash should be treated exactly the same as dividends on negotiable instruments such as stock.

More importantly, however, we disagree with Canel's extension of the holdings in Phillips, Brown, and Webb's. Canel applies those cases to the Illinois unclaimed property act on the basis that the act is a custodial act and not a true escheat act. See Canel, 818 N.E.2d at 324-25. But, as we explain, we think there are significant and valid reasons—based on both the absence of any controlling precedent and the pragmatic

---

[3] As the district court noted, Simon's Second Amended Complaint alleges non-payment of interest but is silent as to dividends.

12

considerations involved—to distinguish the non-payment of interest under DAUPA from the takings involved in <u>Phillips</u>, <u>Brown</u>, and <u>Webb's</u>. Thus, we respectfully decline to follow the Illinois Supreme Court's approach.

Finally, we fail to see how limiting the Commonwealth when instituting a "temporary escheat" program, as opposed to a permanent escheat—which is well within the Commonwealth's powers—would further the Founders' objectives behind the Fifth Amendment. If the Commonwealth so desired, it could assume title to property deemed abandoned by statute. Indeed, certain sections of DAUPA do just that. <u>See</u> 72 P.S. § 1301.17(c) (providing for complete escheat of property when "costs associated with delivery, notice or sale exceed the value of the property"). If the Commonwealth had taken title of the abandoned property, no one could question the Commonwealth's right to also keep the interest earned on that property. In the present case, however, the people of the Commonwealth, acting through their legislature, have decided that the best course of action is for the state to take temporary custody of the abandoned property and return it, albeit without interest, to the rightful owner once that owner steps forward. While the state holds the property, it gains any beneficial use. Because Simon and the other plaintiffs have statutorily abandoned their property and thus have no property right in any interest generated from that property, the Commonwealth of Pennsylvania did not effect a taking when it refused to pay interest earned on the property while in the custody of the state.

13

III.

Appellant Smolow contends that the district court erred when it admitted the report of the Commonwealth's expert, John F. Stoner. Smolow asserts that Stoner's report should not have been admitted because: (1) the Commonwealth was estopped by its purported admissions that it could not calculate the costs of processing Smolow's property; and (2) Stoner's report did not qualify under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Federal Rule of Evidence 702. After reviewing the record and the district court's ruling, we conclude that the district court did not abuse its discretion.

We review a district court's allowance of expert testimony, governed by Federal Rule of Evidence 702, for an abuse of discretion. Oddi v. Ford Motor Co., 234 F.3d 136, 146 (3d Cir. 2000). "An abuse of discretion arises when the District Court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." In re TMI Litig., 193 F.3d 613, 666 (3d Cir. 1999) (internal quotation marks omitted).

A.

Smolow's contention that the Commonwealth admitted certain facts relating to the costs of administering the claims program is based essentially on two statements by the Commonwealth. First, in the stipulation of facts signed by both parties' counsel,

14

Stipulated Fact No. 49 reads: "Treasury does not keep track of or allocate the costs associated with processing any particular claim."

The second alleged admission occurred in correspondence between counsel. In a letter dated January 4, 2006, Smolow's attorney wrote to the Commonwealth's attorney, asking for supplemental discovery on the cost issue.

> Interrogatory No. 11 asks for the basis for defendant's contention that the interest generated on Plaintiff's property during the time it was held by the Treasurer does not exceed the costs incurred by the Treasurer to process his claim. Defendants respond, in part, by stating that the Treasury absorbed the time and imaging costs, none of which have yet been calculated. If these calculations have been made, or will be made, please supplement your answer as appropriate in accordance with the Rules.

On January 13, through its attorney, the Commonwealth responded: "These calculations have not been made. Further, the time Treasury personnel spent to process Mr. Smolow's claim cannot be calculated because the time spent by personnel on any given claim is not something that is recorded."

We think the district court correctly interpreted these discovery responses. The district court concluded that the Commonwealth's "stipulations and interrogatory response pertain only to whether Treasury could have itself calculated the time spent to process plaintiff's claims on the basis of time and records of direct costs." The district court also found that "the interrogatory responses do not pertain to whether Treasury could retain an outside expert to reliably estimate the cost of processing plaintiff's claim."

15

Without doubt, Stipulated Fact 49 says nothing about what Treasury can or cannot calculate. It only stipulates that costs are neither tracked nor allocated by Treasury. And we agree with the district court's assessment of the interrogatory response. The language used is read most naturally to mean what the district court said, namely that Treasury itself had not and could not calculate the costs. The response admits nothing concerning an expert's ability to estimate the costs associated with claim processing.

We also do not think Smolow could have reasonably understood the responses to mean that Treasury could not estimate the costs. Smolow himself hired an expert to estimate the costs associated with claims processing. Therefore, we agree with the district court that the statements do not constitute binding admissions. See Glick v. White Motor Co., 458 F.2d 1287, 1291 (3d Cir. 1972) ("[T]o be binding, judicial admissions must be unequivocal." (citing Oscanyan v. Arms Co., 103 U.S. 261, 264 (1880)).

B.

Regarding the substance of Stoner's report, we recognize that an expert witness must meet three requirements: qualification, reliability, and fit. Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003); In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-43 (3d Cir. 1994). Here, we find no error by the district court when it admitted Stoner's report because Stoner and his report satisfied the three requirements.

First, Stoner is qualified to opine on the issue of estimating costs associated with processing property claims. He is a certified public accountant with over 23 years of

16

experience. In its brief briefs before us, appellants do not appear to dispute Stoner's qualification.

Second, Stoner's analysis is based on reliable principles, methods, and evidence. The district court analyzed in detail the relevant factors, as set forth in Paoli, and we see no abuse of discretion in its analysis. Stoner interviewed five of the twenty individuals directly involved in processing unclaimed property and claims for that property. Based on the interviews, Stoner seemed to have made reasonable assumptions about how much time was required to handle and process Smolow's property and claim.

Smolow contends that Stoner's method "could not be repeated or used on a day-to-day basis." We see no reason why admissibility must be premised on an accounting method's amenability to quotidian use. And we disagree that Stoner's method cannot be repeated. As the district court sufficiently summarized, Stoner's report describes in detail the steps he took to estimate the time. True, the cost estimates reached using Stoner's methodology may vary depending on the particular assumptions any given expert makes about the underlying facts, but this inherent variability does not mean the methodology itself is not repeatable.

Smolow's position appears to be based on Stoner's reliance of information not found in the record or not produced before close of discovery. But it is well-accepted that "Rule 703 permits experts to reply on hearsay so long as that hearsay is of the kind normally employed by experts in the field." TMI Litig., 193 F.3d at 697. The hearsay

17

evidence employed by Stoner, i.e., interviews with appropriate Treasury personnel, is the type "normally and reasonably relied upon by accountants." See Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc., 851 F.2d 540, 545 (1st Cir. 1988).

Third, Smolow contends that Stoner's report "should have been rejected because it simply did not fit the facts of the case." We disagree. Smolow's assertion here relies on the Commonwealth's decision to not track precisely the amount of time needed to process property claims. That may be so, but that does not imply that the time needed cannot be estimated by an expert who reviews the process. Furthermore, Stoner's analysis does fit with the facts as presented in his report. This case does not present the type of blatantly incorrect factual assumptions which would lead us to exclude a financial expert's opinion. See Elcock v. Kmart Corp., 233 F.3d 734, 754-55 (3d Cir. 2000) (holding that a court abused its discretion when admitting expert economic testimony because the expert's assumptions about possible earnings of the plaintiff were contradicted by actual evidence of record).

While time-tracking methods better than Stoner's post hoc analysis may exist—and the Commonwealth may wish to implement such a procedure to assist in analyzing its internal efficiencies—little in this case leads us to conclude that the admission of Stoner's report was an abuse of discretion contravening the correct approach to expert testimony. Moreover, "[a] party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for

18

his opinion can highlight those weaknesses through effective cross-examination." Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002); see also Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction as to burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Accordingly, we hold that the district court did not abuse its discretion when it admitted Stoner's expert report.

IV.

Finally, we note that our opinion today does not decide certain issues that may affect future actions and which Simon asserted in his complaint. We do not decide whether the Takings Clause requires just compensation for the non-payment of dividends of unclaimed property while in the custody of the Commonwealth. We also do not decide whether any due process requirements were met. Appellants have not argued that the procedure by which the Commonwealth receives and converts property falls short of minimal standards of due process. Thus, we do not address the issue. We also do not decide whether any of the "presumed abandoned" property was improperly classified as "abandoned." Certain members of the putative class may have valid disputes as to the presumption of their property being abandoned. For instance, if property transferred to the Commonwealth did not meet the 5-year requirement of 72 P.S. § 1301.3, then the owner of that property may have a valid dispute over the propriety of that transfer. It may be, in certain cases, that an unconstitutional taking did occur, but those hypothetical cases

19

are not before us today. We are cognizant of the potential for abuse when the state seizes property presumed to be abandoned, especially when the auditing services are contracted out on a contingency fee basis. But we think any concerns and abuses are better dealt with by ensuring proper procedure.

V.

For the foregoing reasons, we affirm the District Court's judgment.