**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: UNITED STATES OF AMERICA V. 6.03 ACRES OF LAND IN THE COUNTY OF SANTA BARBARA, STATE OF CALIFORNIA, ET AL, | No. 21-56358<br><br>D.C. No.<br>2:20-cv-10647-<br>AB-AFM |
| KIMBALL-GRIFFITH, L.P., | OPINION |
| *Plaintiff-Appellant*, | |
| v. | |
| BRENDA BURMAN, in her official capacity as the Commissioner of the United States Bureau of Reclamation; SCOTT MCGOLPIN, in his official capacity as the Head of the County of Santa Barbara Public Works Department and Director of the County Water Agency; DAS WILLIAMS, Santa Barbara County Board of Supervisor, individually in his official capacity as policy maker for the Santa Barbara County Water Agency and as Purchaser of Emergency Road Access Easement; | |

GREGG HART, Santa Barbara County Board of Supervisor, individually in his official capacity as policy maker for the Santa Barbara County Water Agency and as Purchaser of Emergency Road Access Easement; BOB NELSON, Santa Barbara County Board of Supervisor, individually in his official capacity as policy maker for the Santa Barbara County Water Agency and as Purchaser of Emergency Road Access Easement; JOAN HARTMANN, Santa Barbara County Board of Supervisor, individually in her official capacity as policy maker for the Santa Barbara County Water Agency and as Purchaser of Emergency Road Access Easement; STEVE LAVAGNINO, Santa Barbara County Board of Supervisor, individually in his official capacity as policy maker for the Santa Barbara County Water Agency and as Purchaser of Emergency Road Access Easement; CACHUMA OPERATION AND MAINTENANCE BOARD; ERNEST CONANT, in his official capacity as the Regional Supervisor for the BOR Region 10,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Central District of California
Andre Birotte, Jr., District Judge, Presiding

Argued and Submitted December 7, 2022
Submission Withdrawn January 18, 2023
Resubmitted May 4, 2023
Pasadena, California

Filed May 10, 2023

Before:  MILAN D. SMITH, JR., DANIEL P. COLLINS,
and KENNETH K. LEE, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### Easements

The panel affirmed the district court's dismissal of Kimball-Griffith, L.P.'s action against federal and local government defendants asserting easement rights over a maintenance road on federal land in Montecito, California.

In 1952, the United States initiated an eminent domain action to acquire land in Montecito, California, to build the Ortega Reservoir. Kimball-Griffith's property is located directly north of the Ortega Reservoir, and the maintenance

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

road at issue (the Access Road) runs along the southern edge of Kimball-Griffith's property, just within the boundaries of the federal reservoir land. In 1989, the federal Bureau of Reclamation (BOR) granted an easement over the Access Road to the County of Santa Barbara, and the County installed locked gates across the road, blocking public entry. In 2020, Kimball-Griffith filed this lawsuit, asserting the right to use the Access Road based on its purported ownership of "an equitable servitude and covenant running with the land."

The district court held that Kimball-Griffith's claim against the BOR and its officials must be construed pursuant to the Quiet Title Act (QTA). Because the QTA's statute of limitations had elapsed, the court dismissed the claims against the BOR. The district court dismissed the remaining claims as time-barred and because Kimball-Griffith failed to allege a property interest in the Access Road.

The parties disputed whether Kimball-Griffith's claim against the BOR and its officials must proceed pursuant to the QTA and, as a result, comply with its statute of limitations. In a case decided after argument in this case, the Supreme Court held in *Wilkins v. United States*, 143 S. Ct. 870 (2023), that the QTA's limitations period was a mere claims-processing rule, not a jurisdictional requirement. The panel held that in light of *Wilkins*, it need not decide whether the statute of limitations applied in this case. With jurisdiction no longer in question, the panel held that it could affirm on any ground supported by the record.

The panel affirmed the dismissal of Kimball-Griffith's claims because Kimball-Griffith failed to plead a property interest in the Access Road. To succeed on any of its claims, Kimball-Griffith must establish a property interest in

an easement over the Access Road.  Kimball-Griffith argued that the 1952 Decree of Taking and 1955 Judgment preserved an easement for Kimball-Griffith's predecessors, the Cunniffs, and that this easement passed to Kimball-Griffith.  First, Kimball-Griffith asserted that the Cunniffs had an easement over the Access Road as owners of property abutting the road.  The panel held, however, that Kimball-Griffith did not allege that, at the time of condemnation, the Access Road existed as a "public street."  As a result, Kimball-Griffith cannot rely on the theory that the Cunniffs, as adjacent landowners, acquired a private easement.  Second, the panel held that Kimball-Griffith had not alleged facts suggesting that the Cunniffs acquired an easement over the Access Road as a third party by any other means or operation of law.   Indeed, prior to the eminent domain action, the Cunniffs owned all the land underlying the relevant portion of the current Access Road, as well as the land on both sides of the current road.  Accordingly, they could not have acquired a private easement over the road against themselves.  The panel concluded that without allegations supporting a property interest in an easement over the Access Road, all of Kimball-Griffith's claims failed.

## COUNSEL

Michael M. Berger (argued), Manatt Phelps & Phillips LLP, Los Angeles, California; John K. Dorwin, Buellton, California; for Plaintiff-Appellant.

Matthew J. Barragan (argued) and Kevin B. Finn, Assistant United States Attorneys; David M. Harris, Assistant United States Attorney, Civil Division Chief; E. Martin Estrada,

United States Attorney; Office of the United States Attorney; Los Angeles, California; for Defendant-Appellee Brenda Burman.

Callie Patton Kim (argued), Deputy Assistant General Counsel; Rachel Van Mullem, County Counsel; Office of the Santa Barbara County Counsel; Santa Barbara, California; for Defendants-Appellees Scott McGolpin, Das Williams, Gregg Hart, Bob Nelson, Joan Hartmann, and Steve Lavagnino.

William W. Carter (argued), Musick Peeler & Garrett LLP, Los Angeles, California, for Defendant-Appellee Cachuma Operation and Maintenance Board.

## OPINION

M. SMITH, Circuit Judge:

This case arises from a dispute concerning access to a maintenance road on federal land. In the 1950s, the United States condemned a tract of land adjacent to what is now Appellant Kimball-Griffith's property, including land underlying a maintenance road, which was later closed to the public. In 2020, Kimball-Griffith sued various federal and local government defendants, asserting easement rights over the road. The district court dismissed Kimball-Griffith's claims against all defendants. Because Kimball-Griffith has not plausibly alleged a property interest in an easement over the maintenance road, we affirm.

## BACKGROUND

In 1952, the United States initiated an eminent domain action to acquire land in Montecito, California to build the Ortega Reservoir. At the time the action was filed, part of the condemned land was owned by Kimball-Griffith's predecessors-in-interest, Phillip and Ethyl Cunniff. In 1955, the district court entered a final judgment documenting the taking of the Cunniffs' land (the 1955 Judgment) and specified that the government took the property "subject . . . to existing rights of way in favor of the public or third parties for highways [and] roads . . . on, over, and across said land." The 1952 Decree of Taking related to the condemnation contained the same "subject to" language.

In 1958, the Cunniffs sold forty-five acres of their remaining land to Loma Griffith, *née* Kimball, who later transferred the property to Kimball-Griffith, L.P. Kimball-Griffith's property is located directly north of the Ortega Reservoir, and the maintenance road at issue in this case (the Access Road) runs along the southern edge of Kimball-Griffith's property, just within the boundaries of the federal reservoir land. In 1989, the federal Bureau of Reclamation (BOR) granted an easement over the Access Road to the County of Santa Barbara, and the County installed locked gates across the road, blocking public entry.

Over thirty years later, in November 2020, Kimball-Griffith filed this lawsuit, asserting the right to use the Access Road based on its purported ownership of "an equitable servitude and covenant running with the land." In its amended complaint—styled as a "Petition to Reopen" the 1955 Judgment—Kimball-Griffith asserted ejectment and injunctive relief claims against the BOR and its officials, demanding removal of the gates blocking the Access Road;

taking and conspiracy-to-commit-a-taking claims against the County, reservoir authority, and other local government entities and contractors pursuant to 42 U.S.C. § 1983; and a judicial taking claim against the district court.

The district court dismissed the case in its entirety. The court held that Kimball-Griffith's claim against the BOR and its officials must be construed pursuant to the Quiet Title Act (QTA), 28 U.S.C. § 2409a(a), the federal statute that waives the United States's sovereign immunity with respect to claims challenging federal title to land. Because the QTA's statute of limitations had elapsed, the court dismissed Kimball-Griffith's claim against the BOR. The court dismissed the remaining claims as time-barred and because Kimball-Griffith failed to allege a property interest in the Access Road. This appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's dismissal for failure to state a claim de novo, accepting the allegations in the complaint as true and viewing them in the light most favorable to the plaintiff. *Gonzalez v. Google LLC*, 2 F.4th 871, 885 (9th Cir. 2021).

## ANALYSIS

## I

At the outset, the parties dispute whether Kimball-Griffith's claim against the BOR and its officials (BOR defendants) must proceed pursuant to the QTA and, as a result, comply with its statute of limitations. The QTA waives federal sovereign immunity with respect to claims challenging federal title to land. 28 U.S.C. § 2409a(a). It generally provides "the exclusive means by which adverse claimants c[an] challenge the United States' title to real

property," *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983), including challenges related to easements, *Robinson v. United States*, 586 F.3d 683, 686 (9th Cir. 2009). QTA claims are subject to a twelve-year statute of limitations. 28 U.S.C. § 2409a(g).

The BOR defendants argue that, because Kimball-Griffith's claim asserts an easement over federal land, it can be brought only pursuant to the QTA and is thus long barred by its statute of limitations. Kimball-Griffith contends that this case does not implicate the QTA at all. Rather, it argues that its claim against the BOR is a "Petition to Reopen" the 1955 Judgment, which, according to Kimball-Griffith, provides an alternative ground for jurisdiction. The 1955 Judgment purported to reserve jurisdiction for the court "to make further orders and decrees" related to the condemnation. So, Kimball-Griffith argues, the federal government waived immunity by stipulating to the Judgment, and Kimball-Griffith is not required to invoke the QTA in this case.

At the time this case was argued, our court's case law had interpreted the QTA's statute of limitations to be a jurisdictional requirement. *See Adams v. United States*, 255 F.3d 787, 796 (9th Cir. 2001). Under that precedent, we may have been obligated to resolve the parties' dispute regarding the applicability of the QTA's statute of limitations before considering the merits. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction . . . .").

However, in light of a Supreme Court decision decided after argument in this case, we now need not do so. In *Wilkins v. United States*, 143 S. Ct. 870 (2023), the Court

held that the QTA's limitations period is a mere claims-processing rule—not a jurisdictional requirement. *Id.* at 877, 881. The Court explained that it "will treat a procedural requirement as jurisdictional only if Congress clearly states that it is." *Id.* at 876 (cleaned up). Reversing our court's decision below in that case, the Supreme Court held that the QTA lacks such a clear statement creating a jurisdictional requirement. *Id.* at 877, 881.

Now that the Supreme Court has overruled our precedent and held that the QTA's statute of limitations is merely a claims-processing rule, we need not decide whether the statute of limitations applies in this case. With our jurisdiction no longer in question, we may "affirm on any ground supported by the record." *Sec. Life Ins. Co. of Am. v. Meyling*, 146 F.3d 1184, 1190 (9th Cir. 1998). As explained below, we affirm the dismissal of Kimball-Griffith's claims because Kimball-Griffith failed to plead a property interest in the Access Road.

## II

To succeed on any of its claims, Kimball-Griffith must establish a property interest in an easement over the Access Road. Its ejectment claim against the BOR for removal of the gates is premised on Kimball-Griffith's purported right to use the Access Road. Likewise, establishing an easement interest in the road is a prerequisite to Kimball-Griffith's taking, conspiracy-to-commit-a-taking, and judicial taking claims. *See Turnacliff v. Westly*, 546 F.3d 1113, 1118 (9th Cir. 2008) ("[T]o state a claim under the Takings Clause, a plaintiff must first demonstrate that he possesses a property interest that is constitutionally protected." (cleaned up)); *Stop the Beach Renourishment, Inc. v. Fla. Dept. of Env't Prot.*, 560 U.S. 702, 728 (2010) (plurality) ("What counts

[for judicial taking claims] is . . . whether the property right allegedly taken was established.").

Kimball-Griffith argues that the 1952 Decree of Taking and 1955 Judgment preserved an easement for Kimball-Griffith's predecessors, the Cunniffs, and that this easement passed to Kimball-Griffith. The relevant documents specify that the United States took title to the reservoir land subject to "existing rights of way in favor of the public or third parties for . . . roads . . . over and across [the] land." So, if the Cunniffs had an easement over the road at the time of the eminent domain action, it would have been preserved and potentially passed to Kimball-Griffith.

Kimball-Griffith asserts that the Cunniffs had an easement over the Access Road as owners of property abutting the road. In support, it cites two California Supreme Court cases—*Bacich v. Bd. of Control of California*, 144 P.2d 818 (Cal. 1943), and *Breidert v. Southern Pacific Co.*, 394 P.2d 719 (Cal. 1964). Under *Bacich*, "an owner of property abutting upon a public street has a property right in the nature of an easement in the street . . . which is his private right, as distinguished from his right as a member of the public." 144 P.2d at 823. *Breidert* clarifies that an "interference with the property owner's access to the street upon which his property abuts" will "constitute[] a taking" if it causes "a substantial impairment of his right of access to the general system of public streets." 394 P.2d at 722.

However, Kimball-Griffith has not alleged that, at the time of condemnation, the Access Road existed as a "public street." Kimball-Griffith alleges that the Access Road existed before the condemnation and makes general references to "historic access" to the road until it was gated off but does not allege that the public had a right-of-way over

the road.  And the 1890 subdivision map cited by Kimball-Griffith shows—at most—only that some form of the Access Road (or plans to build the road) *existed* in 1890.   It does not show that it was a public street.  *See Gardner v. County of Sonoma*, 62 P.3d 103, 110 nn.7, 9 (Cal. 2003) ("[P]rior to California's adoption of statutory methods of dedication [in 1893], the mere filing and recordation of a subdivision map did not create a dedication to public use of property so depicted on the map, e.g., streets, highways, and parks, until there was action upon the dedication.").  Likewise, the 1944 topographical map shows, at most, only the existence of the Access Road at that time.  As a result, Kimball-Griffith cannot rely on the theory that the Cunniffs, as adjacent landowners, acquired a private easement in a "public street" under *Bacich* and *Breidert*.

Nor has Kimball-Griffith alleged facts suggesting that the Cunniffs acquired an easement over the Access Road as a third party by any other means or operation of law.[1] Indeed, it appears that, prior to the eminent domain action, the Cunniffs owned all the land underlying the relevant portion of the current Access Road, as well as the land on both sides of the current road.  Accordingly, they could not have acquired a private easement over the road against *themselves*.  *See Canyon Vineyard Ests. I, LLC v. DeJoria*, 294 Cal. Rptr. 3d 198, 210 (Ct. App. 2022) ("Because an

---

[1] Despite Kimball-Griffith's argument, *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), did not reject traditional requirements for easement creation.  *Cedar Point Nursery* held only that the government could effect a taking of private property even if it did not assert a formal easement over that property.  *See id*. at 2076.  The case did not address the manner in which a private party could *create an easement* and otherwise has no bearing on this case.

easement is the right to use or prevent the use of the land of another, a person cannot have an easement on his or her own land."); Jon W. Bruce & James W. Ely, Jr., The Law of Easements & Licenses in Land § 3:11 (2023) ("[I]t is axiomatic that a landowner cannot obtain an easement in the landowner's own property.").

Since Kimball-Griffith has not plausibly alleged that the Cunniffs had an easement over the Access Road, no easement could have been preserved as an "existing right[] of way" in the eminent domain action. Without allegations supporting a property interest in an easement over the Access Road, all of Kimball-Griffith's claims fail.

## CONCLUSION

For the reasons described, we **AFFIRM** the district court.