**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AGNES SUEVER, deceased;
MADONNA SUEVER; STEVE TUCKER;
ALEXANDER VONDJIDIS; RICHARD W.
SEITZINGER; JO-ANN SEITZINGER,
individually and as trustees for the
Seitzinger Family Trust;
JOHNSTONE WHITLEY; TONY LEE;
LYNN KEITH,

              *Plaintiffs-Appellants,*

            v.

KATHLEEN CONNELL, in her
individual capacity; RICHARD
CHIVARO, in his individual and
official capacity; GEORGE DELEON,
in his individual and official
capacity; STEVE WESTLY, in his
individual and official capacity as
Controller of the State of
California,

            *Defendants-Appellees.*

No. 08-15884

D.C. No.
5:03-CV-00156-RS

11831

AGNES SUEVER; MADONNA SUEVER;
STEVE TUCKER; RICHARD W.
SEITZINGER, individually and as
trustees for the Seitzinger Family
Trust; ALEXANDER VONDJIDIS; JO-
ANN SEITZINGER individually and
as trustees for the Seitzinger
Family Trust; JOHNSTONE WHITLEY;
LYNN KEITH; TONY LEE; RICHARD
V. VALDES,

       *Plaintiffs-Appellees,*

       v.

JOHN CHIANG, in his individual and
official capacity as Controller of
the State of California, and in his
custodial capacity as administrator
of the Unclaimed Property Fund;
RICHARD CHIVARO, in his individual
and official capacity,

       *Defendants-Appellants.*

No. 08-16161

D.C. No.
5:03-cv-00156-RS

OPINION

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted
July 13, 2009—San Francisco, California

Filed August 26, 2009

Before: Barry G. Silverman, Richard R. Clifton, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## COUNSEL

William Wayne Palmer & Daniel J. Culhane, Law Offices of William W. Palmer, Sacramento, California, for the plaintiffs-appellants/appellees.

Robin B. Johansen, James C. Harrison, Thomas A. Willis, & Margaret R. Prinzing, Remcho, Johansen & Purcell, LLP, San Leandro, California, for the defendants-appellees/appellants.

## OPINION

MILAN D. SMITH, JR., Circuit Judge:

Plaintiffs, an uncertified class of individuals whose financial assets escheated to the Controller's Office pursuant to California's unclaimed property law (UPL), CAL. CIV. PROC. CODE §§ 1300, *et seq.*, sued alleging insufficient notice and mishandling of their property. Defendants are Kathleen Connell, Richard Chivaro, Steve Westly, and George DeLeon (collectively, the Controller).[1] For the reasons discussed

---

[1]Connell was the former Controller for the State of California, and Westly was the Controller at the time of the initial complaint. Chivaro was the Chief Legal Counsel at the Controller's Office, and DeLeon works in the Controller's Unclaimed Property Division.

below, we affirm the district court's (1) denial without prejudice of Plaintiffs' motion for a permanent injunction requiring the State to pay interest on unclaimed property at California's alternative borrowing rate; and (2) partial summary judgment determining that the Eleventh Amendment bars Plaintiffs' "restitution" claims and dismissing former Controller Westly as a defendant in his individual capacity. However, we reverse the district court's rulings that (3) the State is constitutionally required to pay interest when it returns property to owners under the UPL; and that (4) the Eleventh Amendment does not bar Plaintiffs from being awarded such interest retroactively.

## I.  BACKGROUND

### A.  Statutory Framework

Title 10 of the California Code of Civil Procedure governs unclaimed property located within California. *See* Cal. Civ. Proc. Code §§ 1300, *et seq.* Its purpose is "to provide for the receipt, custody, investment, management, disposal, escheat and permanent escheat of various classes of unclaimed property . . . ." *Id.* § 1305. " 'Escheat[ ]' . . . means the vesting in the state of title to property the whereabouts of whose owner is unknown or whose owner is unknown . . . subject to the right of claimants to appear and claim the escheated property . . . ." *Id.*

§ 1300(c). " 'Permanent escheat' means the absolute vesting in the state of title to property . . . pursuant to judicial determination, pursuant to a proceeding of escheat as provided by Chapter 5 . . . of [Title 10], or pursuant to operation of law and the barring of all claims to the property by the former owner thereof or his successors." *Id.* § 1300(d).

During the time in which Plaintiffs submitted their claims to the Controller's Office for return of their escheated assets, California Code of Civil Procedure § 1540(c) stated:

> The Controller shall add interest at the rate of 5 percent or the bond equivalent rate of 13-week United States Treasury bills, whichever is lower, to the amount of any claim paid the owner under this section for the period the property was on deposit in the Unclaimed Property Fund. No interest shall be payable for any period prior to January 1, 1977. Any interest required to be paid by the state pursuant to this section shall be computed as simple interest, not compound interest. For purposes of this section, the bond equivalent rate of 13-week United States treasury bills shall be defined in accordance with the following criteria:
>
> (1) The bond equivalent rate of 13-week United States Treasury bills established at the first auction held during the month of January shall apply for the following July 1 to December 31, inclusive.
>
> (2) The bond equivalent rate of 13-week United States Treasury bills established at the first auction held during the month of July shall apply for the following January 1 to June 30, inclusive.

Since August 11, 2003, however, § 1540(c) has stated: "No interest shall be payable on any claim paid under this chapter."

The Controller's Office must deposit proceeds from the sale of escheated property in the Unclaimed Property Fund in an Abandoned Property account. *Id.* § 1564(a). At least monthly, the Controller's Office must also transfer to California's General Fund all money in the Abandoned Property account in excess of $50,000. *Id.* § 1564(c).

## B. The Putative[2] Class Allegations[3]

---

[2]In its April 1, 2008 order, the district court granted Plaintiffs' motion to amend the class definition, but denied Plaintiffs' motion to certify the

Plaintiffs allege that the Controller wrongfully appropriated, misused, sold, and refused to relinquish their financial assets. In their first amended complaint, they claim that the Controller unlawfully employed "auditors" to pressure certain financial institutions into paying or turning over assets that were not properly subject to escheat. For example, these financial institutions purportedly had knowledge of some of Plaintiffs' addresses when the transfers occurred. Moreover, the Controller allegedly failed to provide the requisite notice to Plaintiffs, thereby preventing them from reclaiming their property before its liquidation. After 1989, Plaintiffs assert, the Controller implemented a policy of publishing only block advertisements rather than listing the specific names and addresses of putative owners, in violation of California Code of Civil Procedure § 1531. The Controller also allegedly stopped mailing direct notices to owners' last known addresses.

The first amended complaint further alleges that the Controller misused the property it unlawfully seized. For instance, Plaintiffs assert that the Controller unconstitutionally applied simple-interest-rate legislation retroactively, thereby appropriating compound interest that had accrued on escheated property. Meanwhile, the Controller purportedly refused to pay any interest at all on escheated cashier's checks and dividends. Nor, according to Plaintiffs, did the Controller properly register or notify owners of escheated cashier's checks, or properly segregate the money in the Unclaimed Property Fund from the money in the General Fund. The Controller also allegedly destroyed documents pertaining to proof of

_____

class "without prejudice to a further motion upon any future resolution of the interest rate issues."

[3]We extract many of the facts regarding the first amended complaint from the background discussion in *Suever v. Connell* (*Suever I*), 439 F.3d 1142, 1145-46 (9th Cir. 2006), facts which our own independent review of the record confirms.

ownership as well as the contents of safety deposit boxes, again without notice.

Plaintiffs claim that these unlawful acts amount to a conspiracy on the Controller's part to obtain funds with which to mitigate California's longstanding budget crisis. Through this conspiracy, the Controller allegedly permitted several companies, regulated entities, and financial institutions to unlawfully withhold over $1 billion in personal property. Rather than promulgating any formal rules to authorize these actions, the Controller switched internal policies repeatedly, failed to provide any notice, and insulated itself from public accountability. In doing so, Plaintiffs allege, the Controller violated not only the federal Due Process, Takings, and Contracts Clauses, but also federal and state securities statutes and the UPL itself.

Plaintiffs cite the above-mentioned violations as supporting their claim for declaratory relief, which in turn, they assert, would require the Controller to disgorge or return either their property or the reasonable value thereof. In addition, Plaintiffs allege two 42 U.S.C. § 1983 claims based on procedural due process and the Takings Clause. Specifically, Plaintiffs assert that the Controller violated procedural due process by appropriating and liquidating assets without adequate notice, and that these same actions also constitute a "taking" that requires the State to pay just compensation. Plaintiffs also allege that they deserve the "proper value of their property, which "should be valued according to the applicable principles of law for reimbursement purposes," and that they are entitled to: (1) an accounting of their appropriated property; (2) attorneys' fees; (3) creation of a common fund for return of their property "with proper interest"; and (4) injunctive relief to require the return of their property and to prevent the Controller's continued violation of federal constitutional or statutory law.

Finally, Plaintiffs allege several state law actions: negligence, fraud, a taxpayer claim, breach of fiduciary duty, and

violation of the UPL. These violations purportedly warrant payment of "restitution" in the amount of the difference between the proceeds of the sale of their unclaimed property and the current market value, as well as punitive damages. Plaintiffs also assert that the state claims warrant injunctive relief to require the Controller's prospective compliance with the UPL.

## C. Status of Individual Plaintiffs' Claims for Escheated Property

In 1993, Plaintiff Agnes Suever (now deceased and represented in this lawsuit by her daughter, Plaintiff Madonna Suever, who held general and financial power of attorney over her) purchased a cashier's check from World Savings and Loan Bank in the amount of $13,603.24. She then "forgot" about the check, which "fell under a piece of heavy furniture for quite some time." The check escheated to the State in October 1999. According to the declaration of the Chief of the Division of Collections at the Controller's Office, "[t]he fact that the Controller reimbursed World Savings for the full amount of the cashier's check that had previously escheated to the State indicates that Agnes Suever reclaimed her property from World Savings rather than the Controller. If Mrs. Suever reclaimed her property from the State, the State would have paid her the statutory rate of interest then in effect."

In November 1991, 505 shares of Plaintiff Steve Tucker's Intel stock escheated to the State. He alleges that his stock "was seized by the . . . Controller . . . without notice, his knowledge or consent, and while he was living in England as an English citizen." In 1999, the State returned to Tucker $74,728, including $18,703 in interest. He claims that he is entitled to "roughly double" the interest he actually received because the State was able to "avoid[ ] borrowing costs" while it held his property.

Plaintiff Alexander Vondjidis purchased stock from Hewlett Packard (HP) when he worked in HP's office in Athens,

Greece, in the 1970s. He stopped working for HP in 1978, and the Athens office closed in the early 1980s. His stock escheated in 1993. In 2001, he filed a claim for it, and the Controller returned to him $25,961, including $4464 in interest.

General Electric transferred stock owned by Plaintiffs Richard and Jo-Ann Seitzinger to the State in 1994. The Seitzingers submitted a claim for the shares in September 2000, and the Controller returned to them $18,366, including $3986 in interest.

Plaintiff Johnstone Whitley—whose daughter, Plaintiff Lynn Keith, holds power of attorney over him—claims that the Controller destroyed documentary evidence transferred to the State by a trust company that would have established their family's interest in railroad rights of way. The Controller's records show that the trust company sold the railroad rights of way in 1977 and could not locate certain beneficiaries of the trust, including Whitley's father and grandfather, to pay them their share of the sale proceeds. In 1986, the Controller paid Whitley and a relative $15,581.66 each, plus an additional $3418.83 each, which (although not specifically designated as such) appears to be interest.

Plaintiff Richard Valdes "was an individual shareholder, taxpayer, and former President of Columbia Yacht Corporation" who claims that "the Controller seized shares of stock [he] owned in Columbia Yacht." He alleges that, when he sought return of these shares, "[t]he Controller's Office informed [him] that all their records pertaining to his stock w[ere] deliberately destroyed pursuant to the Controller's unwritten document destruction policy." The Controller asserts that Valdes "admits that all of the shares he now claims are identified as belonging to other people, not him, and he admits that he knows of no documents that could prove his claim." However, Valdez maintains that "because of either poor record keeping or deliberate wrongdoing, when

the shares were seized, they were listed under the name 'Columbia Yacht Shareholders' instead of [the] individual names." It is true, though, as the Controller points out, that Valdes has admitted in a related case that it is "possible, but not probable" that his memory regarding his ownership of the shares is inaccurate.

## D.  Prior Relevant Proceedings

In 2001, counsel for Plaintiffs filed a lawsuit in the case of *Taylor v. Connell* seeking on behalf of different plaintiffs in the Eastern District of California the return of stock or refund of proceeds held by the Controller, alleging violations of, *inter alia*, the Due Process Clause, federal securities acts, and state law. *See* No. CIV. S-01-2407 FCD GGH, 2002 WL 34204694, at *1 (E.D. Cal. June 26, 2002). After the district court dismissed the action on Eleventh Amendment grounds, *id.* at *3-6, we vacated the judgment and remanded, concluding:

> Because the plaintiffs seek genuinely prospective relief, and because the funds they seek are held by the state as custodian in trust for them rather than as the state's own funds, much as a municipality holds a car towed from an expired parking meter, the complaint should not have been dismissed under the Eleventh Amendment for lack of jurisdiction.

*Taylor v. Westly* (*Taylor I*), 402 F.3d 924, 936 (9th Cir. 2005). The *Taylor I* panel further stated, however, that the Eleventh Amendment *did* bar the plaintiffs' "retroactive requests for money," and also noted: "We need not decide the issue of sovereign immunity in the context of a takings claim, since we have already decided that plaintiffs' property has not been taken at all, but has merely been held in trust for them by the Controller." *Id.* at 935-36.

Meanwhile, in November 2003, prior to our decision in *Taylor I*, the district court in the present case granted the Con-

troller's motion to dismiss this action, without leave to amend, on the ground that the Eleventh Amendment barred the claims alleged. On appeal, we issued our decision in *Suever I*, which, based on the ruling in *Taylor I*, likewise vacated the district court's Eleventh Amendment ruling because "the class's request that the Controller return the members' property is not barred by the State's sovereign immunity." *Suever I*, 439 F.3d at 1147-48. While the *Suever I* panel gave examples of some claims that could go forward and others that "were clearly barred," it elected not to parse all of the averments of the first amended complaint or to opine on every potential claim. *Id.* at 1148.

On remand, the Controller moved for judgment on the pleadings, asking the district court to answer the questions left open by the *Suever I* panel regarding which claims could proceed and which could not, and the district court granted the motion in part in November 2006. Plaintiffs subsequently moved for partial summary judgment on several issues, largely based on the argument that it is beyond factual dispute that the State engaged in conduct that we had previously declared unlawful. *See Taylor I*, 402 F.3d at 935 (stating that the plaintiffs "allege[d] actions that would fall outside the scope of the Controller's statutory authority to such an extent as to be ultra vires"); *Suever I*, 439 F.3d at 1148 (noting that the first amended complaint alleges both "that the Controller acted *ultra vires* by improperly seizing property ineligible for escheat" and "that the Controller acted unconstitutionally by providing inadequate notice to property owners whose property was to be escheated"); *Taylor v. Westly (Taylor II)*, 488 F.3d 1197, 1201 (9th Cir. 2007) (granting plaintiffs a preliminary injunction in part because "the likelihood of success on the merits [wa]s high" regarding their unconstitutional notice claim).[4]

---

[4]In *Taylor v. Westly (Taylor III)*, 525 F.3d 1288 (9th Cir. 2008) (per curiam), we held that the "entirely new statutory procedure addressing escheat" promulgated by the State following the issuance of the preliminary injunction in *Taylor II* is facially constitutional, and that, as a result, the district court did not abuse its discretion in dissolving the injunction. *Id.* at 1289-90.

The district court's October 12, 2007 order granted partial summary judgment to Plaintiffs on their claim that the State may not constitutionally withhold interest when it returns property to owners under the UPL. The district court otherwise denied Plaintiffs' claims for (1) a declaration on the merits that the notice provisions of the UPL and the Controller's practices thereunder are unconstitutional; (2) a declaration on the merits that the Controller has taken possession of property "outside the scope" of the UPL; and (3) an order that the Controller begin the process of promulgating regulations that will govern how persons may present and "perfect" a claim under the UPL.

On October 26, 2007, the district court issued an order denying Plaintiffs' motion for class certification, which had been heard at the same time as the motion for partial summary judgment. The district court also denied in November 2007 a request by the Controller for leave to seek reconsideration of the ruling that interest is constitutionally required.

In its April 1, 2008 order, the district court granted the Controller's motion to certify for interlocutory appeal its earlier ruling that the State is constitutionally required to pay interest when it returns property to owners under the UPL; granted Plaintiffs' motion to amend the class definition but denied without prejudice their motion to certify the class; and denied Plaintiffs' request for a permanent injunction requiring the State to pay interest at California's alterative borrowing rate. The district court also granted in part and denied in part the Controller's motion for partial summary judgment. Specifically, the district court granted the Controller's motion regarding (1) Plaintiffs' claim for retroactive "restitution" in the amount of the difference between the proceeds of the sale of their unclaimed property and the current market value; (2) dismissal of former Controller Westly as a defendant in his individual capacity; (3) Plaintiffs' taxpayer and state law claims; and (4) Plaintiffs' motion to compel further discovery responses. However, the district court denied without preju-

dice the Controller's request for a determination that the UPL, as amended, is now constitutional[5]; rejected the Controller's statute of limitations argument; and denied the Controller's requests for a protective order and for sanctions arising from its contention that Plaintiffs have improperly obtained and used privileged documents.

### E.    The Consolidated Appeals

On appeal, Plaintiffs challenge the district court's (1) denial without prejudice of their motion for a permanent injunction requiring the State to pay interest on unclaimed property at California's alternative borrowing rate; and (2) partial summary judgment determining that the Eleventh Amendment bars Plaintiffs' "restitution" claims and dismissing former Controller Westly as a defendant in his individual capacity. The Controller, meanwhile, challenges the district court's partial summary judgment rulings that (3) the State is constitutionally required to pay interest when it returns property to owners under the UPL; and that (4) the Eleventh Amendment does not bar Plaintiffs from being awarded such interest retroactively.

### II.    JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. §§ 1291, 1292(a)(1), and 1292(b). We review a district court's ruling on the constitutionality of a state statute de novo. *Bland v. Fessler*, 88 F.3d 729, 732 (9th Cir. 1996).

A district court's grant of summary judgment also receives de novo review. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997). "We must determine, viewing the evidence in the light most favorable to . . . the non-moving party, whether there are any genuine issues of material fact

---

[5]*See supra* note 4 (noting that the *Taylor III* court subsequently held that the amended version of the UPL is facially constitutional).

and whether the district court correctly applied the substantive law." *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004). "We may affirm on any grounds supported by the record." *Id.* "The underlying substantive law governing the claims determines whether or not [the disputed fact] is material." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). "There must be enough doubt for a 'reasonable trier of fact' to find for the plaintiffs in order to defeat the summary judgment motion." *Id.* (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

## III.   DISCUSSION

### A.   Prospective Interest Under the UPL

[1] The Controller challenges the district court's October 12, 2007 ruling that the State is constitutionally required to pay interest when it returns property to owners under the UPL. Plaintiffs, on the other hand, challenge the district court's April 1, 2008 denial of their motion for a permanent injunction requiring the State to pay interest on unclaimed property at California's alternative borrowing rate. Because, as discussed below, intervening Ninth Circuit precedent has held that the State is not constitutionally required to pay *any* interest under the UPL, we need not reach the issue regarding the appropriate rate of such interest.

After the district court's October 12, 2007 order, and after the filing of the opening briefs in this case, we squarely rejected the proposition that property owners have a compensable Fifth Amendment right to interest earned on unclaimed property that escheats to the State of California. *Turnacliff v. Westly*, 546 F.3d 1113, 1119-20 (9th Cir. 2008). In *Turnacliff*, the plaintiff, in his capacity as administrator of an estate, "alleged that the Controller improperly calculated the interest due to the Estate for the time that the State of California held the Estate's unclaimed property." *Id.* at 1115. In the alternative, he also argued that:

> if the Controller's construction of California Code of Civil Procedure § 1540(c) was correct, then the Controller violated the Takings Clause of the Fifth Amendment by failing to pay "just compensation" for taking the Estate's property. Turnacliff contends that, under the traditional common law rule that "interest follows the principal," any and all interest that the unclaimed property earned while held by California belongs to the Estate. Turnacliff further maintains that, to the extent that the property did not earn actual interest, the Estate is entitled to constructive interest.

*Id.* at 1118.

The *Turnacliff* panel first held that the Controller had properly calculated interest under California Code of Civil Procedure § 1540(c). *Id.* Next, the panel rejected the plaintiff's Fifth Amendment argument because "[a]ssuming, *arguendo*, that the Estate had a cognizable property right to interest earned by its escheated property, and that this property was 'taken' by California, no further compensation is due to the Estate because when the Estate abandoned its property, it forfeited any right to interest earned by that property." *Id.* at 1119 (footnote omitted). In support of this conclusion, the panel reasoned:

> In *Texaco, Inc. v. Short*, 454 U.S. 516, 526 [1982], the Court explained that "[f]rom an early time, th[e] Court has recognized that States have the power to permit unused or abandoned interests in property to revert to another after the passage of time." The Court further explained that owners of abandoned property were not owed compensation:
>
> > In ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable

actions imposed by law, this Court has never required the State to compensate the owner for the consequences of his own neglect . . . . It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right[.]

*Id.* at 530.

Though *Short* concerned abandoned mineral interests, the long-running principle articulated in that case applies with equal force to this case involving commercial paper. To the extent that it was even entitled to it, the Estate has received "just compensation," because California returned the Estate's abandoned property, with statutorily-determined interest of 1.69%. *The Estate has no Fifth Amendment right to "actual" or "constructive" interest earned by its property while held by the State*; California need not further compensate the Estate for the consequences of the Estate's neglect.

*Turnacliff*, 546 F.3d at 1119-20 (emphasis added).

**[2]** Apparently in light of the intervening *Turnacliff* decision, Plaintiffs concede that "[w]hether the UPL requires the payment of interest on genuinely 'abandoned' property under a *Constitutional* UPL is not before the Court in this appeal, and is irrelevant." As previously noted, we have declared that the current version of the UPL is facially constitutional. *Taylor III*, 525 F.3d at 1289. Thus, insofar as the district court's October 12, 2007 order requires prospective payment of interest, or payment of interest on any claims for unclaimed property that escheated under the current version of the UPL, both parties now appear to agree that *Turnacliff* requires reversal, as do we.

## B.  Retroactive Interest

### 1.    Plaintiffs' Standing to Seek Retroactive Interest

In its appeal, the Controller contends that Plaintiffs lack standing to seek retroactive interest under the pre-amendment version of the UPL because none of them who made a valid claim for unclaimed property has been denied interest. We disagree.

**[3]** The "irreducible constitutional minimum" of Article III standing has three "elements":

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " . . . . Second, there must be a causal connection between the injury and conduct complained of —the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (alterations in original). Here, as the district court explained in its November 2007 order denying the Controller's motion for leave to seek reconsideration, the Controller concedes that now-deceased Plaintiff Agnes Suever did not receive interest when she reclaimed the amount of her cashier's check. The Controller asserts that she would have received interest if she had made her claim to the Controller rather than to World Savings and Loan Bank. However, Plaintiffs dispute this assertion, arguing that "the Controller has *never* paid interest on cashier's checks," and that the Controller's argument "is belied by not only the Assignment Agreement, which clearly

contemplates the payment of interest, but by the UPL itself, which does not differentiate between payment of a claim to the Owner or an Assignee."

In addition, as noted in the district court's November 2007 order, Plaintiff Richard Valdes alleges that the Controller has failed even to acknowledge that it holds his property, let alone to return either principal or interest. Although the Controller argues that Valdes's claim lacks merit, citing his deposition testimony to the effect that it is "possible, but not probable" that his memory is inaccurate, the question of whether Valdes is likely to prevail is a separate issue from standing. Further, there is no apparent dispute that if Valdes were able to prove that the Controller holds his property, the Controller would willingly return the principal but would *not* pay the interest absent a court order or amendment of the UPL.

**[4]** Finally, the remaining Plaintiffs allege that they received *inadequate* interest, because they were constitutionally entitled to "constructive" interest instead of the then-statutorily provided "simple" interest. This was the same argument legitimately raised, though ultimately rejected, in *Turnacliff*. Accordingly, Plaintiffs have alleged a sufficiently concrete, actual injury in the form of economic loss, fairly traceable to the Controller's actions, which a favorable decision would redress so as to establish their constitutional standing to assert their retroactive interest claim.

## 2. Merits of Retroactive Interest Claim

The Controller asserts that the Eleventh Amendment bars Plaintiffs from seeking retroactive interest under the pre-amendment version of the UPL. In arguing to the contrary, Plaintiffs attempt to distinguish *Turnacliff* as "irrelevant" and "inapposite" because "the instant Appeal relates to interest payable on *illegitimately seized* private property used for public purposes, not on property that legitimately escheated to the State." In the course of its decision, the *Turnacliff* court noted:

The Estate does not challenge the fundamental pre-rogative of the State to acquire and hold abandoned property. And, before the district court, the Estate did not challenge the escheat, per se, of its property to the State. Implicitly, therefore, the Estate admitted that the property properly escheated to the State because it sat abandoned for many years.

546 F.3d at 1119. Presumably in reliance on this passage, Plaintiffs note that the *Turnacliff* court "found that the prop-erty owner in that case had no cognizable claim to interest because plaintiff itself had 'abandoned' her property." By contrast, Plaintiffs argue, their property "cannot be deemed 'abandoned' under the pre-amendment UPL because the prop-erty was illegally seized outside the scope of the UPL itself," thereby entitling them to retroactive interest. The Eleventh Amendment is no bar, they assert, because, under the holdings of *Taylor I*, 402 F.3d at 932-35, and *Suever I*, 439 F.3d at 1146-48, state sovereign immunity does not preclude them from suing to obtain their own property that state officials seized and retained through *ultra vires* and unconstitutional acts.

These arguments are unavailing. First, the district court expressly held that Plaintiffs "have failed to meet their burden to show as a matter of undisputed fact that seizures of prop-erty outside the scope of the UPL have occurred."

**[5]** Second, Plaintiffs misread the relevant precedent. Our case law states that the Eleventh Amendment does not bar claims by plaintiffs for return of their *own* property under the UPL, because such claims are not for "damages" against the State. *See Taylor I*, 402 F.3d at 932-35; *Suever I*, 439 F.3d at 1143. But nothing in *Taylor I* or *Suever I* supports Plaintiffs' assertions that they are entitled to *more* than the actual prop-erty that the State took into its possession or the proceeds of that property. On the contrary, the *Taylor I* court expressly limited its holding to avoid such a reading: "Eleventh Amend-

ment immunity from suit against [the State] for damages payable from its treasury has no application to *escheated property* and *sales proceeds from escheated property*." 402 F.3d at 932 (emphasis added). Likewise, in applying the rule established in *Taylor I*, the *Suever I* court held only that "[t]he Eleventh Amendment does not bar the class's claims [for] . . . the return of the class's *property*." 439 F.3d at 1146-47 (emphasis added). Thus, while the Eleventh Amendment is no bar to Plaintiffs' claims for return of their escheated principal and the sales proceeds therefrom, state sovereign immunity clearly precludes Plaintiffs from successfully obtaining *more* than that amount in the form of interest.

**[6]** Indeed, the *Taylor I* court made this very point:

> The district court was correct in concluding that, to the extent the plaintiffs sought a declaratory judgment that Mr. Taylor's and Ms. Pepple-Gonsalves's shares of stock were unconstitutionally taken from them, and an injunction that the state pay them money to compensate them, the claims would not fall within the *Ex parte Young* prospective relief exception to the Eleventh Amendment. While some may describe "this retroactive award of monetary relief as a form of 'equitable restitution,' " such claims are "in practical effect indistinguishable in many aspects from an award of damages against the State."

402 F.3d at 935 (quoting *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)); *see also Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008) (holding that a claim for damages for the unconstitutional denial of just compensation under the Fifth Amendment cannot qualify as available prospective relief under *Ex parte Young*, and is therefore barred by the Eleventh Amendment), *cert. denied*, 129 S. Ct. 258 (2008). Here, Plaintiffs similarly seek a declaration that the interest on their principal was unconstitutionally taken from

them, and a permanent injunction requiring the State to pay them money at California's alternative borrowing rate. Accordingly, we hold that the retroactive interest they seek is precisely the form of relief barred by the Eleventh Amendment, and we reverse the district court's contrary ruling in its October 12, 2007 order.

## C.  Retroactive "Restitution"

**[7]** Plaintiffs also argue that the district court erred in denying their claim for retroactive "restitution" in the amount of the difference between the proceeds of the sale of their unclaimed property and the current market value. In other words, they claim that they are entitled to recover the "value" of non-cash property taken into the Controller's possession without regard to the actual sums the Controller obtained upon liquidating it. As previously explained, however, Plaintiffs are not entitled to *more* than the actual property that the State took into its possession or the proceeds of that property. *See Taylor I*, 402 F.3d at 932. Rather, such claims for additional compensation, whether described as "restitution" or otherwise, are indistinguishable in effect from claims for money damages against the State and, as such, are barred by the Eleventh Amendment. *Id.* at 935.

**[8]** Nor can Plaintiffs justify their claim for "restitution" on the basis that they seek only private money, not state funds. First, contrary to Plaintiffs' arguments, there is not $5.3 billion worth of private money in the Unclaimed Property Fund. As required by state law, the Controller transfers funds in excess of $50,000 to the General Fund every month. CAL. CIV. PROC. CODE § 1564(c). Second, even if there were $5.3 billion in the Unclaimed Property Fund, the Controller could not lawfully use it to pay Plaintiffs the difference between the proceeds of the sale of their escheated property and what they claim that property is worth now; to do so, the Controller would by definition have to use money belonging to other owners of unclaimed property. For these reasons, the district

court properly held that Plaintiffs are not entitled to recover anything beyond the actual cash proceeds that the Controller realized upon liquidating their non-cash escheated property.

### D.  Dismissal of Former Controller Westly as a Defendant in his Individual Capacity

Finally, Plaintiffs challenge the district court's April 1, 2008 ruling dismissing former Controller Westly as a defendant in his individual capacity. This argument is also unavailing.

As the district court observed, the first amended complaint names each defendant in his or her "individual and official" capacity. "Individual" capacity, however, can refer to two distinct doctrines. First, a complaint can name a state official in an "individual" capacity as a fictional surrogate for the State, such that the Eleventh Amendment does not apply even though recovery ultimately still comes from the State's coffers. *See Malone v. Bowdoin*, 369 U.S. 643, 647 (1962) (noting that "the action of a federal officer affecting property claimed by a plaintiff can be made the basis of a suit for specific relief against the officer *as an individual* only if the officer's action is not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void" (emphasis added) (internal quotation marks omitted))[6]; *Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding that a state official who acts unconstitutionally is "stripped of his official or representative character and is subjected *in his person* to the consequences of his individual conduct" (emphasis added)).[7]

---

[6]The *Taylor I* court, 402 F.3d at 934, referred to this as the "*Lee-Malone* exception to sovereign immunity," recognizing the role that *United States v. Lee*, 106 U.S. 196 (1882), also played in the development of the rule.

[7]The scope of the *Ex parte Young* exception has since been limited to claims for prospective equitable relief and state funds "ancillary" to such relief; the Eleventh Amendment bars retroactive compensation to plaintiffs from state funds. *Edelman*, 415 U.S. at 663-69.

Second, a plaintiff may pursue a 42 U.S.C. § 1983 claim against a state official seeking to impose *personal* liability on that official, such that the money comes from the official's *own* resources. To succeed on the merits of such a claim, a plaintiff must show only that "the official, acting under color of state law, caused the deprivation of a federal right." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In that instance, the Eleventh Amendment is not implicated, because the claim is truly against the individual, not the State. *Id.* at 30. Nor does liability in such cases turn on whether the state official acted within his or her authority or outside of it; the only issue is whether the conduct was undertaken under color of state law. *Id.* at 28.

Applying these principles, the district court correctly concluded that "even though there are 'individual' claims against *present* office holders for *prospective injunctive relief* (under *Ex parte Young*) and for an injunction requiring that plaintiffs' own property be returned to them (under *Lee-Malone*), no claim for damages against individual defendants ha[s] been adequately pleaded." In support of this determination, the court grounded its reasoning in part in its earlier November 2003 order, which dismissed the first amended complaint without leave to amend for failure to fairly state a claim against any named defendant in the sense contemplated by *Hafer*:

> For those plaintiffs who have alleged that they are entitled to money damages, they have failed to plead: (1) a constitutional violation; (2) caused by specific behavior of an individual defendant; (3) entitling them to money damages from that individual. Instead, the complaint sets forth a description of plaintiffs' grievances followed by broad and sweeping allegations of misfeasance in the Controller's office lasting for more than a decade. Plaintiffs do not present a link between any particular harm they suffered and the actions of any individual defendant. Nor do they make any effort to differentiate between

the four individual defendants named in this action. By pleading in such a scattered fashion, plaintiffs have put themselves in a position where their complaint cannot fairly be read as one for money damages against any individual defendant, but rather a complaint alleging that the customs and practices of the Controller's Office have caused them harm.

Although we disagree with the court's additional determination that the § 1983 allegations in the first amended complaint actually indicate that the State is the "real, substantial party in interest," thereby triggering Eleventh Amendment immunity, we nonetheless affirm the court's conclusion that the allegations are insufficient to put Westly on notice of specific, individual actions for which he is personally liable to Plaintiffs.

[9] On appeal, Plaintiffs offer no persuasive arguments to the contrary. They merely make the bald assertion that the following allegations in the first amended complaint "squarely satisfy the requirements of *Hafer*":

60.    Starting in 1990, then Controller Gray Davis, with defendants Chivaro, DeLeon, and others, made a series of unpublished, internal policy decisions. When Defendant Connell took office in 1995, she continued and/or failed to correct the policies of Controller Davis that continues to the present day; likewise, when Defendant Westly took office in 2003, he continued and/or failed to correct the same policies.

61.    As discussed in greater detail below, Defendants' actions in taking possession of Plaintiffs' private property that falls completely outside the statutes, and sometimes raiding private bank safety deposit boxes, without notice to Plaintiffs and Class, and the selling the property without notice to or the consent of the Plaintiff violates the express provi-

sions of the UPL, and the California Constitution, Article I, §§ 7, 15, and the United States Constitution, including the Contract Clause of Article I, Section 10, and the Fourth, Fifth and Fourteenth Amendments, the latter of which states that *no state* shall "deprive *any person* of life, liberty, or *property* without due process of law." These policy decisions and actions directly caused the injury described herein that was inflicted on the various Plaintiffs in this case.

Paragraph 60, however, says nothing about what the "internal policy decisions" were, or about how they purportedly harmed Plaintiffs. Rather, it again merely challenges the policies and customs continued by Westly in his official position with the State. Nor is paragraph 61 helpful to Plaintiffs. It likewise challenges only the policies and practices of the Controller's Office, and it fails to differentiate at all among the four named defendants. Moreover, when read in conjunction with the individual Plaintiffs' allegations, *see supra* section I.B., paragraph 61 fails to tie any particular harm that any particular plaintiff allegedly suffered to any discrete action taken by Westly. The district court therefore properly dismissed Westly as a defendant in his individual capacity.

## IV. CONCLUSION

For these reasons, we AFFIRM the district court's (1) denial without prejudice of Plaintiffs' motion for a permanent injunction requiring the State to pay interest on unclaimed property at California's alternative borrowing rate; and (2) partial summary judgment determining that the Eleventh Amendment bars Plaintiffs' "restitution" claims and dismissing former Controller Westly as a defendant in his individual capacity. However, we REVERSE the district court's rulings that (3) the State is constitutionally required to pay interest when it returns property to owners under the UPL; and that (4) the Eleventh Amendment does not bar Plaintiffs from

being awarded such interest retroactively. Each party shall bear its own costs on appeal.

**AFFIRMED in part; REVERSED in part; and REMANDED for further proceedings.**