**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 24-1170**

_____

STEVEN G. ALBERT; BARRY DIAMOND,

> Plaintiffs – Appellees.

> v.

BROOKE E. LIERMAN, in her official capacity as the Comptroller of the State of Maryland,

> Defendant – Appellant.

_____

Appeal from the United States District Court for the District of Maryland, at Baltimore. Julie R. Rubin, District Judge.  (1:22-cv-01558-JRR)

_____

Argued:  January 31, 2025                    Decided:  September 10, 2025

_____

Before DIAZ, Chief Judge, and HARRIS and BERNER, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded by published opinion.  Judge Harris wrote the opinion, in which Chief Judge Diaz and Judge Berner joined.

_____

**ARGUED:**  Howard Ross Feldman, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellant.  Julie M. O'Dell, SMITH, KATZENSTEIN, & JENKINS LLP, Wilmington, Delaware, for Appellees. **ON BRIEF:** Anthony G. Brown, Attorney General, Robert E. Frey, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellant.  Kelly A. Green, Lauren A. Ferguson, SMITH, KATZENSTEIN, & JENKINS LLP, Wilmington, Delaware; Arthur Susman, LAW OFFICE OF ARTHUR SUSMAN,

Chicago, Illinois; Charles J. Piven, BROWER PIVEN, A PROFESSIONAL CORPORATION, Baltimore, Maryland, for Appellees.

PAMELA HARRIS, Circuit Judge:

Under the Maryland Uniform Disposition of Abandoned Property Act, Maryland assumes temporary custody of various forms of property – savings accounts, stocks, unclaimed wages, and the like – that are "presumed abandoned" after an owner has not engaged with the property for a period of time, typically three years. Prior to 2004, an owner who filed with the state to reclaim their property could, if successful, be repaid both the principal amount and the interest that had accrued while the property was in state custody. Since Maryland amended the Act in 2004, claimants no longer receive the accrued interest.

Steven Albert claims this failure to pay interest is unconstitutional under the Takings Clause. He seeks a declaratory judgment stating that Maryland effects a taking if it does not pay just compensation for the accrued interest, and he asks for an injunction requiring Maryland to pay claimants that full amount. The Comptroller, who administers the Act, moved to dismiss, arguing that Albert lacks standing, that the claims are not ripe, and that the claims are barred by Eleventh Amendment sovereign immunity. The district court denied the motion, and the Comptroller appealed.

Under the collateral order doctrine, we review only the district court's denial of sovereign immunity. We affirm in part and reverse in part. We hold that Albert's request for interest that has already accrued is tantamount to a claim for money damages and thus barred by the Eleventh Amendment. It is only to the extent that Albert also seeks compensation for the future interest that will *start* to accrue *after* a federal court's judgment

3

issues in this case, that he seeks prospective relief falling within the *Ex parte Young* exception to Eleventh Amendment immunity.

## I.

Steven Albert[1] is a Maryland resident who alleges that he owns property held in custody by the state of Maryland pursuant to the Maryland Uniform Disposition of Abandoned Property Act ("the Act"), Md. Code, Com. Law § 17-101 *et seq.* The parties dispute whether the Act should be interpreted as a custody statute – under which residents retain their ownership rights in the "presumed abandoned" property held by Maryland – or an escheat statute – under which Maryland takes ownership of the property.[2] But the parties

---

[1] Albert proposes to represent himself and a class of similarly situated property owners, and brought this action with a second putative class representative, Barry Diamond. The court has not yet ruled on class certification, and we refer here only to Albert or the "plaintiffs."

[2] The Act is structured as follows: First, it lays out various categories of property that are "presumed abandoned" upon the satisfaction of certain conditions. Md. Code, Com. Law §§ 17-301–308. The categories range from deposits held by banks, to funds held under terminated insurance policies, to tangible property from dissolved business associations. *See, e.g.*, § 17-301; § 17-302; § 17-305. For most of the categories, so long as certain notice requirements are satisfied, the property is presumed abandoned three years after the owner last engaged with it or the property holder last had a valid address for the owner. *See, e.g.*, § 17-301(b); § 17-302(a); § 17-303; § 17-304(b). Second, the holders of presumed abandoned property are required to pay or deliver the abandoned property to Maryland. § 17-312. The Comptroller is authorized to sell non-money property and retain custody of the proceeds. § 17-316. Third, the Act requires the Comptroller to keep no more than $50,000 of the funds in a specialized account, for paying any resident who files to reclaim their property. § 17-317. The remaining funds are allocated to specialized funds, such as the Maryland Legal Services Corporation Fund, and to Maryland's General Fund. *Id.*

agree that the Act allows residents who can prove they own or owned property held pursuant to the Act to file a claim with the Comptroller and be compensated for the principal value of their property. § 17-318; § 17-319. Before 2004, the Act also required the Comptroller to pay claimants for interest that had accrued on their property. But the Maryland legislature repealed that provision, and the Act no longer requires the Comptroller to pay interest. *See* 2004 Md. Laws ch. 110 (S.B. 276).[3]

Understanding that he would not be entitled to accrued interest if he filed a claim for his property with Maryland, Albert first filed this lawsuit in federal court. Albert sues Brooke Lierman in her official capacity as Comptroller of the State of Maryland,[4] claiming that the Act violates the Takings Clause of the Fifth Amendment, as applied to the states by the Fourteenth Amendment. Specifically, he alleges that the Act authorizes Maryland to use residents' property while it is in state custody without paying just compensation for that period of beneficial use. In other words, Maryland gets to accrue interest on the property it holds without paying it back to claimants, and that – in Albert's view – constitutes a taking. He seeks a declaratory judgment that this refusal to pay accrued

---

[3] Before the district court, the Comptroller argued that while the amended Act is silent as to compensating claimants for more than the principal amount of their property, it also does not expressly prohibit such compensation. On appeal, the Comptroller assumes that the plaintiffs are correct that the Act does not allow for payment of more than the principal value. We operate on the same assumption. The Comptroller may not pay claimants without authorization, and neither party directs the court to any provision that would authorize the Comptroller to make payments of accrued interest.

[4] The complaint named then-Comptroller Peter Franchot, but current Comptroller Brooke Lierman was automatically substituted upon taking office. Fed. R. Civ. P. 25(d).

5

interest is a taking, and an injunction requiring the Comptroller to pay the full measure of just compensation – principal plus interest – when he files to reclaim his property in the future.[5]

The Comptroller moved to dismiss the complaint, arguing that Albert lacks standing, that his claim is not ripe, and that he fails to state a claim on which relief could be granted. The Comptroller interpreted the complaint as seeking only prospective relief, but argued in the alternative that any claim for retroactive relief would be barred by Eleventh Amendment sovereign immunity. The district court denied the motion. *Albert v. Franchot*, No. 1:22-cv-01558-JRR, 2023 WL 4058986 (D. Md. June 16, 2023).

The court held that Albert had standing, that his claim was ripe, and that he adequately pled a facial challenge to Maryland's non-payment of accrued interest on claimants' property. As to Eleventh Amendment sovereign immunity, the court explained that although the Comptroller was sued in an official capacity and thus covered by Eleventh Amendment immunity, Albert's claim fell within the *Ex parte Young* doctrine, which allows a federal court to enjoin, prospectively, an ongoing violation of federal law by state officials. The court characterized the complaint as requesting *prospective* injunctive and declaratory relief, explaining that Albert sought only "to bring the Act into compliance

---

[5] In the complaint, the plaintiffs assert that a rate of interest equal to what the state earned as interest would constitute just compensation. On appeal, the plaintiffs more broadly describe themselves as seeking just compensation for the state's beneficial use of their property, whatever the measure of that may be. We do not reach the merits, so we do not need to wade into the question of what amount constitutes just compensation.

with the Takings Clause[.]" *Id.* at *5. His claim, therefore, was not barred by Eleventh Amendment immunity.

The Comptroller moved for reconsideration, arguing that Albert's claim did not fall within the *Ex parte Young* doctrine because it was in effect a claim for *retrospective* relief. Part of what Albert wanted, the Comptroller reasoned, was accrued interest reaching back to the time at which Maryland received his "presumed abandoned" property and put it to public use – a time well before the hypothetical future entry of the federal court judgment sought by Albert. In the Comptroller's view, that made the relief sought by Albert retrospective, not prospective, as required by *Ex parte Young*.

The district court declined to reconsider its prior holding that the plaintiffs' federal Takings Clause claim was not barred by state sovereign immunity. *Albert v. Franchot*, No. 1:22-cv-01558-JRR, 2024 WL 308937, at *3 (D. Md. Jan. 26, 2024).[6] The court reiterated its view that Albert's claim was covered by *Ex parte Young* because it sought to end an ongoing violation of federal law – that is, an ongoing Takings Clause violation. Although the requested injunctive relief would have an ancillary effect on the state treasury, the court reasoned, this did not take it out of the realm of prospective relief covered by *Ex parte Young*. *Id.* (citing *Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653, 662 (4th Cir. 1989)). Albert

---

[6] In his complaint, Albert also pled that the Act violated the Takings Clause of the Maryland Constitution. On reconsideration, the district court dismissed this state claim as barred by Eleventh Amendment immunity under *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). *Albert*, 2024 WL 308937, at *2–3. The dismissal of that claim is not on appeal.

7

sought prospective relief only, the court explained, and therefore his claim was not barred by Eleventh Amendment immunity.

The Comptroller timely filed this appeal of the district court's denial of her motion to dismiss and motion to reconsider.

## II.

## A.

Our court has limited jurisdiction over this appeal. The Comptroller appeals the district court's denial of its motion to dismiss under the collateral order doctrine, pursuant to which state actors may appeal district court orders denying a claim of Eleventh Amendment immunity. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993). Our court does not have jurisdiction over the Comptroller's standing and ripeness challenges unless they fall within our pendent appellate jurisdiction, meaning the "issues are 'inextricably intertwined' with or 'necessary to ensure meaningful review of' the Eleventh Amendment immunity claim." *Indus. Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 167 (4th Cir. 2023) (quoting *Rux v. Republic of Sudan*, 461 F.3d 461, 476 (4th Cir. 2006)).

We follow *Dobson*, 68 F.4th at 167, in concluding that although standing and ripeness are threshold jurisdictional issues to be decided before a court considers the merits of a case, neither is "an essential prerequisite to determining the other jurisdictional, immediately appealable claim in this case: Eleventh Amendment immunity." *Id.* (emphasis omitted). Here, as in *Dobson*, the "immediately appealable Eleventh

8

Amendment immunity issue asks us to determine whether this suit falls within the parameters of [] *Ex Parte Young*," which in turn "require[s] us to determine whether the relief sought was prospective or retrospective[.]" *Id.* at 167–68.  In contrast, the standing and ripeness inquiries ask us to consider whether the plaintiffs have a protected property interest in presumed abandoned property upon which Maryland infringed, whether the plaintiffs can allege an injury without having submitted a claim to Maryland's administrative process, and whether the Comptroller has reached a final decision on how it will treat the property.  These are not inextricably intertwined issues.

We disagree with the Comptroller's view that the issues are sufficiently intertwined because they are governed by some overlapping Takings Clause precedents.  The Comptroller expressly concedes that a number of her arguments rest on precedent that has nothing to do with the Eleventh Amendment issue before us.  And in any event, overlap in relevant precedent is not the *Dobson* standard.  To fall within our pendent appellate jurisdiction, the Comptroller's standing and ripeness arguments would have to "rest on the '*same specific question*' that '*will necessarily resolve*' or would be necessary to review the Eleventh Amendment immunity issue," and they do not do so here.  *Id.* at 168 (internal citation omitted).

Accordingly, we decide today only whether Albert's claim is barred by Eleventh Amendment sovereign immunity, a question of law we review de novo.  *Zito v. N.C. Coastal Res. Comm'n*, 8 F.4th 281, 284 (4th Cir. 2021).

9

**B.**

The Eleventh Amendment "precludes citizens from bringing suits in federal court against their own states," including actions "against state officials that are in fact actions against the state as the real party in interest." *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 746 (4th Cir. 2018) (citations omitted). It is not disputed that the Comptroller of Maryland is an instrumentality of the state for Eleventh Amendment purposes. But Albert argues that his claim against the state is not barred by Eleventh Amendment immunity for two reasons: first, the Eleventh Amendment does not apply to Takings Clause claims, and second, his claim seeks purely prospective relief and therefore falls within the *Ex parte Young* doctrine. We disagree with his first argument, and hold that his second prevails only in part.

We may dispense briefly with Albert's argument that the Eleventh Amendment does not apply to Takings Clause claims. In Albert's view, the self-executing nature of the Takings Clause means that a state necessarily waives its immunity when it takes property and assumes a duty to pay just compensation. But our court squarely rejected that argument in *Hutto v. South Carolina Retirement System*, 773 F.3d 536, 551–53 (4th Cir. 2014), and again in *Zito v. North Carolina Coastal Resources Commission*, 8 F.4th 281, 285–88 (4th Cir. 2021). We are bound by those holdings, and we reiterate that "sovereign immunity [will] bar a takings claim against a State in federal court if state courts remain open to adjudicating the claim." *Zito*, 8 F.4th at 288.

The remaining question is whether Albert's Takings Clause claim falls within the *Ex parte Young* doctrine, which operates as a kind of "exception" to the Eleventh

10

Amendment's bar on suits against states in federal courts. *See Wicomico*, 910 F.3d at 746. The Eleventh Amendment precludes a federal court from ordering a monetary award against a state. *Kimble v. Solomon*, 599 F.2d 599, 603 (4th Cir. 1979). But under *Ex parte Young*, a federal court may, under the right circumstances, enjoin state officials from future violations of federal law – and it may do so, as the district court recognized, even if that order will have "a direct and substantial impact on the state treasury." *Antrican v. Odom*, 290 F.3d 178, 185–86 (4th Cir. 2002) (quoting *Milliken v. Bradley*, 433 U.S. 267, 289 (1977)); *see Edelman v. Jordan*, 415 U.S. 651, 668 (1974) (approving as "permissible" this "ancillary effect" on state treasuries).

Ex parte Young*, however, applies only when a complaint alleges an ongoing violation of federal law and "seeks relief properly characterized as prospective." *Hutto*, 773 F.3d at 549 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). Relief that operates retroactively, as a "form of compensation" for injuries suffered before a federal court ruling, remains barred. *Edelman*, 415 U.S. at 668 (holding that compensation for illegalities that occurred before a federal court's "substantive federal-question determination" is a "retroactive award of monetary relief" barred by the Eleventh Amendment). Under *Ex parte Young*, in other words, what matters is not whether a plaintiff is seeking relief that will require the expenditure of state funds, but whether the "relief sought is prospective or retroactive in nature." *Antrican*, 290 F.3d at 186.

Here, Albert argues that his claim falls within *Ex parte Young* because he is suffering an ongoing violation of his Fifth Amendment rights and seeks purely prospective relief. Albert has yet to file a claim with Maryland for the return of his property. Instead,

11

he has gone first to federal court, seeking a declaratory judgment that he is entitled to compensation for the interest his property accrued while in Maryland's custody and an injunction requiring the Comptroller to pay that measure of just compensation. With that relief in hand, Albert says, he will then go to Maryland with a claim for just compensation. And because he will seek compensation from Maryland – for interest already accrued and interest that will accrue post-judgment – on a claim he will file with Maryland *in the future*, he argues that he is almost by definition seeking "prospective" relief of the kind available under *Ex parte Young*.

We disagree. First, the fact that Albert seeks relief in the form of a declaratory judgment and an injunction, rather than damages, is not dispositive. That was precisely the situation in *Edelman*, in which the Supreme Court held that a federal-court injunction styled as "equitable restitution" was barred by the Eleventh Amendment because "in practical effect" it required the payment of benefits wrongfully withheld in the past, "at a time when [the state] was under no court-imposed obligation" to make such payments. 415 U.S. at 668; *see Kimble*, 599 F.2d at 603 (describing *Edelman*). It is the substance of the relief sought, not the form, that controls. *See Hutto*, 773 F.3d at 549 (treating request for injunction compelling "return" of monies wrongfully deducted by state retirement system as "claim for money damages" barred by Eleventh Amendment). If an injunction or declaratory judgment would "in essence" compensate a party for a past injury, then it is retrospective, not prospective, under *Ex parte Young*. *Papasan v. Allain*, 478 U.S. 265, 278, 280–81 (1986) (injunction against "continue[d] withholding of accrued benefits" is retroactive and outside scope of *Ex parte Young*); *Green v. Mansour*, 474 U.S. 64, 73

12

(1985) (declaratory judgment with practical effect of award of damages may not be sought in federal court as "partial 'end run' around" *Edelman*). "A remedy for past injury, even if it purports to be an injunction against state officers requiring the *future* payment of money, is barred[.]" *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008) (emphasis added).

Albert's claim is that he suffered a Takings Clause violation at the moment Maryland took his presumptively abandoned property and put it to public use without paying him just compensation. *See Knick v. Township of Scott*, 588 U.S. 180, 189 (2019). He seeks a declaratory judgment and injunction that would require the State of Maryland, through its Comptroller, to pay interest already accrued on that property, dating back – before the entry of any federal-court judgment in this case – to the moment his property was allegedly "taken." But that would be "tantamount to an award of damages for a past violation of federal law," *Papasan*, 478 U.S. at 278 – the violation that allegedly occurred when Maryland first took Albert's property and put it to beneficial use, and then continued to use it for the public benefit without paying just compensation. Like the effort to recover on "an ongoing liability for past breach of trust" in *Papasan*, *id.* at 280, or to recover for benefits wrongfully denied in *Edelman*, 415 U.S. at 668–69, what is sought here is an amount "measured in terms of a monetary loss resulting from a past breach of a legal duty" on the part of state officials, *id.* at 668. A federal-court order to pay that kind of "*accrued* monetary liability" for injury suffered before the entry of a federal court decree is barred by the Eleventh Amendment. *Papasan*, 478 U.S. at 281 (quoting *Milliken*, 433 U.S. at 289); *see also Kimble*, 599 F.2d at 604–05 (Eleventh Amendment bars compensation for

13

injury suffered before district court enters decree); *Wicomico*, 910 F.3d at 747–48 (order requiring state to approve and pay previously denied Medicaid claims would be "retrospective in nature" and thus "foreclosed under the Eleventh Amendment").

This holding puts us in agreement with the Ninth Circuit in *Suever v. Connell*, 579 F.3d 1047 (2009), in which the court held that the Eleventh Amendment barred an injunction requiring California to pay accrued "retroactive interest" on property allegedly "taken" by the state under a statute much like Maryland's. *Id.* at 1059. That form of relief, the court concluded, though it could be described as "equitable restitution," was "in practical effect indistinguishable in many aspects from an award of damages against the State," and thus outside the scope of *Ex parte Young*. *Id.* (quoting *Edelman*, 415 U.S. at 668). It also aligns us with cases holding more generally that federal-court claims for "just compensation" for past "takings" are requests for retroactive relief unavailable under the Eleventh Amendment – no matter how the requests are couched. *See*, *e.g.*, *EEE Mins., LLC v. North Dakota*, 81 F.4th 809, 816 (8th Cir. 2023) (plaintiff may not "repackage[]" just compensation claim as a "request for an injunction that cures past injuries" because such an injunction is "likewise barred by the Eleventh Amendment"); *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) (plaintiff's request for "reparative injunction" ordering payment of just compensation "cannot be fairly characterized as prospective"); *Ladd v.*

14

*Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (same); *Taylor v. Westly*, 402 F.3d 924, 935 (9th Cir. 2005) (same).[7]

Thus, to the extent Albert seeks compensation for interest accrued on his property for the period of time starting with the alleged "taking" and until the future date of a hypothetical federal court judgment, that relief is properly categorized as retroactive and thus barred by the Eleventh Amendment.[8] But should Albert prevail on the merits of his claim and obtain a "substantive federal-question determination" in his favor, *Edelman*, 415

---

[7] Albert brings to our attention the Eleventh Circuit's recent decision in *Maron v. Chief Financial Officer*, 136 F.4th 1322, 1333–34 (2025), considering a similar Takings Clause claim and holding that the requested relief, including the payment of accrued interest, fell within *Ex parte Young* and was not barred by the Eleventh Amendment. The plaintiffs in that case, the court reasoned, were not seeking compensation for past injuries, because they had yet to submit a claim to the state and, in its view, a Takings Clause violation is not "completed" until just compensation is denied by the state. *Id.* at 1334. Albert has not advanced that theory in this case – and indeed, it would be in some tension with Albert's standing argument, which posits that he has already suffered an Article III injury-in-fact because a Takings Clause violation occurred as soon as the state took his private property for public use without paying for it. Here, in other words, Albert's complaint *does* seek compensation for a past injury of payment wrongfully withheld, and that is retrospective relief barred by the Eleventh Amendment.

[8] At the end of his brief, Albert suggests that even if his requested relief falls outside *Ex parte Young* as retroactive, it might still be permitted under the Eleventh Amendment because his court-ordered compensation would not come from Maryland's general treasury. The state disputes this assertion and the district court did not address it, so we are in no position to endorse it as a matter of fact. And in any event, Albert's argument is underdeveloped and unconvincing. It rests on cases – out-of-circuit cases, specifically – addressing the circumstances under which a state official will be treated as an arm of the state, so that the state is the real party of interest. But as noted above, Albert has never disputed, before the district court or our court, that the Comptroller, who he sued in her official capacity, is an instrumentality of the state entitled to sovereign immunity. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity [] should be treated as suits against the State.").

15

U.S. at 668, then the situation changes.  As described above, the Eleventh Amendment prohibits federal courts from ordering states to make retroactive payments for monetary liability accrued *before* any "court-imposed obligation" to conform state conduct to federal law.  *Id.*  But it does not immunize states from future liability for constitutional violations that occur "after entry of the district court's decree." *Kimble*, 599 F.2d at 605.  Under *Ex parte Young*, a federal court may issue an injunction ensuring "compliance *in the future* with a substantive federal-question determination," even if that remedy "might require the expenditure of state funds." *Papasan*, 478 U.S. at 282 (internal quotation marks and citation omitted) (emphasis in original).

What this means, in plain terms, is that if at the end of this case the district court enters judgment in Albert's favor – holding that Maryland's retention of interest earned on Albert's property, without compensation, violates the Takings Clause – then the court may issue an injunction prohibiting Maryland from retaining such interest in the future.  The court, in other words, could effectively require the payment of *post-judgment* interest – for the period after the court rules but before the state properly compensates Albert – as a permissible "ancillary effect" of an *Ex parte Young* injunction compelling future compliance with federal law. *See Edelman*, 415 U.S. at 668.

Accordingly, to the extent Albert seeks declaratory and injunctive relief with respect to "just compensation" for interest accrued before the date of any court judgment, his claim

16

must be dismissed under the Eleventh Amendment.[9]  But to the extent he seeks such relief with respect to interest accrued after the date of a federal court judgment in this case, his claims may proceed, consistent with the Eleventh Amendment.

## III.

For the foregoing reasons, the judgment of the district court is affirmed in part and reversed in part.

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED*

---

[9] Neither the Supreme Court nor our court has conclusively determined whether an Eleventh Amendment immunity defense goes to a court's subject matter jurisdiction or a plaintiff's ability to state a claim on which relief can be granted.  *See Hutto*, 773 F.3d at 543.  We need not resolve that question here.  The reason it might matter is because dismissals for lack of subject matter jurisdiction typically are without prejudice, while dismissals for failure to state a claim may be with prejudice if not curable by amendment. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013); 5B Wright & Miller's Federal Practice & Procedure, Civ. §§ 1350, 1357 (4th ed.), Westlaw (updated May 20, 2025).  In this case, however, we are content to join the Third Circuit in holding that because sovereign immunity is a "threshold, nonmerits issue" that "does not entail any assumption by the court of substantive law-declaring power," *Merritts*, 62 F.4th at 772 (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 433 (2007)), "a dismissal on that basis, like dismissals for lack of jurisdiction, should normally be without prejudice," *id.*

17